State *v.* Taylor.

## STATE *v.* TAYLOR.

### (*Jackson.* June 24, 1901.)

1. MUNICIPAL CORPORATIONS. *Ownership and control of streets.*

   A municipal corporation acquires only an easement in streets dedicated to public use by the acts of the owner in laying them out as part of a town plat, and selling lots abutting on same, and the fee to the lands covered by the streets remains in the original owner and his vendees. (*Post, pp. 463, 464.*)

   Cases cited: Hamilton Co. *v.* Rape, 101 Tenn., 225; Railroad *v.* Bingham, 87 Tenn., 530; Smith *v.* Railroad, 87 Tenn., 630.

2. SAME. *Same.*

   A municipal corporation holds the public streets, in which it has a mere easement, in trust for the public convenience, and has no authority to sell or transfer same, either for or without consideration, so as to invest its grantee with any interest whatever in the property covered by the streets. It cannot transfer the fee, because it does not own it. It cannot transfer the easement, because it is held in trust for the public use only. A statute authorizing it "to sell and dispose" of the streets, if deemed expedient, applies alone to streets in which the city owns the fee. (*Post, pp. 463, 464.*)

   Act construed: Acts 1881, Ch. 167.

   Code construed: § 1915 (S.); § 1607 (M. & V.).

   Cases cited: Humes *v.* Knoxville, 1 Hum., 403; Mayor *v.* Brown, 9 Heis., 1; Railroad *v.* Bingham, 87 Tenn., 530; Smith *v.* Railroad, 87 Tenn., 630.

3. SAME. *Same.*

   But a municipal corporation has the power, under the general law, which has been confirmed by express statute to this corporation, upon its own ideas of utility and expediency, without any power of the Courts to review its action, by ordinance properly passed, not only to open, widen, extend, establish, grade, and pave the public street, but likewise to alter, abolish, vacate, abandon or discontinue the same; and upon

State *v.* Taylor.

its abandonment, alteration, or vacation of a street, in which it has only an easement, the fee reverts to the abutting owner. (*Post, pp. 464–467.*)

Act construed: Acts 1881; Ch. 167.

Case cited: Anderson *v.* Turbeville, 6 Cold., 150.

4. SAME. · *Same.*

But abandonment, vacation, or alteration must be made subject to the right of abutting owners, or others whose properties are thereby injured, to compensation; but persons only remotely affected by such action have no legal cause of complaint. (*Post, p. 467.*)

FROM   OBION.

Appeal in error from Chancery Court of Obion County. JOHN S. COOPER, J.

R. E. MAIDEN, LANNOM & STANFIELD, and J. W. LEWIS for relator.

HAMILTON PARKS and R. P. WHITESELL for Taylor.

CALDWELL, J. This is a bill by the State of Tennessee, on relation of D. W. Beckham, to enjoin G. T. Taylor from erecting a business house on ground alleged to be a part of a public street. The Chancellor granted the relief sought, and the defendant appealed.

In the year 1855, Gen. G. W. Gibbs, owner of the land, laid off and platted a town which he

State *v.* Taylor.

called Union City.  He sold lots according to his
plan on both sides of the numerous streets, includ-
ing Washington avenue, and in 1867 the town so
established, with certain additions, was incorporated
by that name.  Washington avenue was the broad-
est of all the streets, being 100 feet wide at every
point from one end to the other.  It runs east and
west, and is intersected by several north and south
streets, the eastermost of which is Depot street, and
the next, to the westward 120 feet, is First street.
Beck & Bransford owned a large part of the block
of ground bounded by those two streets, Washington
avenue and its first parallel street on the south,
some 500 feet distant.  They abutted on the south
side of Washington avenue 120 feet, the full width
of the block, and had other lots southward.  From
the east and opposite that block, near the middle,
Harrison street entered Depot street, and there ter-
minated.  Such was the situation for years.  In
1884 Harrison street was extended through that
block directly west to First street, and the width
of Washington avenue, for the distance between De-
pot street and First street, was diminished in the
manner, for the purposes, and upon the considera-
tions disclosed in the following deed, namely:

"*Know All Men by These Presents:* That by vir-
tue of the following ordinance of the Mayor and
Aldermen of the corporation of Union City, Tenn.,
passed December 2, 1884, and the consideration
therein expressed, the said Beck & Bransford having

of this date conveyed to the Mayor and Aldermen of Union City, by their deed, the said right of way for Harrison street to First street, as therein set forth. Said ordinance is as follows:

"COUNCIL ROOM, December 2, 1884.

"Board met in regular session. Present: Mayor Moore, Aldermen Bransford, Deitzel, Ownby, and Shoffner. Minutes read and adopted, etc. On motion and second, the following ordinance was passed and ordered spread on the minutes, viz.:

"*Be it ordained by the Board of Mayor and Aldermen of the Corporation of Union City:* That it is the manifest interest of the corporation that Harrison street be extended west to First street, and Beck & Bransford are the owners of the property through which said street would run, if so extended; and, whereas, that portion of Washington avenue between First street and Depot street is wider than necessary, and Beck & Bransford, are willing to exchange with the said corporation the right of way through their said property for a portion of the said Washington avenue. It is, therefore, ordered by the board that the following described portion of Washington avenue is hereby condemned, set aside, and conveyed to the said Beck & Bransford, to wit: Beginning in the south line of Washington avenue at the intersection of the east line of First street, this point being the northwest corner of Beck & Bransford's furniture factory lot, runs thence north with the east line of First street

41 feet to a stake; thence east 120 feet to the west line of Depot street; thence south 41 feet to the south line of Washington avenue; thence west 120 feet to the beginning. In consideration of the transfer of the above property to Beck & Bransford, they have agreed and bound themselves to convey to the corporation of Union City, through its Mayor and Aldermen, the above-mentioned right of way for the extension of Harrison street through to . First street by the following bounds, to wit: Beginning at the northwest corner of Frank Maney's residence lot; thence north 41 feet; thence east 120 feet to Depot street; thence south with Depot street 41 feet to Maney's northeast corner; thence west 120 feet to the beginning. And it is further ordered by the Board of Mayor and Aldermen that when the said Beck & Bransford shall have executed their deed to the said right of way to the said corporation, that the Mayor and Recorder of this corporation are hereby authorized, empowered, and instructed to make and execute to the said Beck & Bransford a deed in fee to that portion of Washington avenue being set forth and described above, such deed to contain the general covenants and warranty, the right to hold and forever use and dispose of and warrant title, etc.

"*Be it further ordained:* That this Act take effect from and after its passage of this day and date.

"JOHN BARRY, *Recorder.*

"J. M. MOORE, *Mayor.*

"Therefore, in compliance with, and in further-
ance of, said ordinance, that portion of Washington
avenue as set forth and described in said ordinance
is hereby conveyed to the said Beck & Bransford,
in fee, to . them and their heirs and assigns, with
covenant of general warranty, that the same is unin-
cumbered, that the right herein exists to so convey,
that the quiet and peaceful possession is guaranteed,
and that the title to the same be warranted to the
said Beck & Bransford, and their heirs and assigns,
by the said Mayor and Aldermen of Union City,
and their successors in office, against the lawful
claims of all persons whatsoever, and we further
certify that the foregoing ordinance, as herein set
forth, is a true and perfect copy of the original, as
shown by the minute book of the said Board of
Mayor aud Aldermen of Union City, Tenn.

"Witness our signatures, this December 4, 1884.

"J. M. MOORE, *Mayor.*

"JOHN BARRY, *Recorder.*"

The streets as originally laid out, and the changes
first referred to, are well illustrated by the ap-
pended diagram, in which the extent of the diminu-
tion of Washington avenue is represented by the
parallelogram inclosing the letter "A," and the
territory taken in exchange for extension of Har-
rison street is represented by the lines surrounding
the letter "B."

State *v.* Taylor.

A = Portion Vacated.

B = Portion Opened.

The Board of Mayor and Aldermen promptly extended Harrison street, as indicated, and since that time the extension has been continuously regarded

and used as a part of one of the public streets of the town.

Beck and Bransford without delay, erected a large brick building upon that part of Washington avenue conveyed to them, and they and their successors in title, ever afterwards and until this action was commenced in September, 1899, held, used, claimed, and enjoyed the same as their own exclusive property. The defendant, Taylor, is the last vendee. At the time the bill was filed he had about completed the demolition and removal of the old building with a view of replacing it with a new one at once.

The charges on which he has been perpetually enjoined are, · in substance and effect, that the ordinance and deed under and by which the Board of Mayor and Aldermen undertook to convey a part of Washington avenue to Beck & Bransford was *ultra vires* and void, · and, hence, that neither they nor any of those claiming under or through them acquired any title whatever to that strip of ground that is still a part of a public street, and as such should be protected against the erection of the contemplated building, which could but be an obstruction to public travel upon one of the principal thoroughfares of the town, and, therefore, a nuisance to the entire community.

In a very lengthy answer the defendant controverts those charges, affirms the validity of the assailed ordinance and deed, and also pleads estoppel and abandonment.

It is obvious, under our law, that the ordinance and deed in question were ineffective to pass title to any portion of Washington avenue to the intended vendees; first because the corporation did not own the fee in the street, and, secondly, because the easement which it did own was not subject to sale and conveyance. The corporation had only the right to use this street for street purposes. That was the extent of the dedication and the board had no authority to exceed its limits. The platting of the territory and sale of the lots by the original owner in the manner heretofore recited vested the streets as such, not otherwise, in the municipality, and at the same time passed to the respective lot purchasers the ultimate fee in the soil to the center of the streets on which they severeally abutted. *Hamilton Co.* v. *Rape*, 101 Tenn., 225; *Railroad* v. *Bingham*, 87 Tenn., 530; *Smith* v. *R. R.*, *Ib.*, 630.

By force of its character and the general law the corporation, upon its organization, became endowed with the proprietorship of the streets, which it received in trust as easements for the convenience of the public. *Humes* v. *Knoxville*, 1 Hum., 403; *Mayor* v. *Brown*, 9 Heis., 1; *Railroad* v. *Bingham*, 87 Tenn., 530; *Smith* v. *Railroad*, *Ib.*, 630.

So, the corporation had only an easement in Washington avenue, and that, from its nature, was incapable of alienation and passage to an individual. Hence, to repeat what has already been remarked,

the ordinance and deed relied on by the defendant were inoperative as to the fee because the corporation did not own it, and as to the easement because it was not transferable.

It is true the amended charter ,(Acts 1881, Ch. 167, Sec. 1,) and also the general statute, (Shannon's Code, Sec. 1915, Subsec. 8), confer on the Board of Mayor and Aldermen power "to sell and dispose of them (streets and alleys) if deemed expedient," and that the board seems to have deemed this sale expedient; but that power relates alone to such streets and alleys as the corporation may in fact own as so much realty and not to those in which it has a mere easement. Otherwise the provision would be void for repugnancy to Sec. 21 of Art. 1 of the Constitution, in that its effect would be to permit the municipality to take the ultimate fee in the soil from the true owner without compensation and pass it to its vendee.

There is another aspect of the case, however, that is not so favorable to the complainant. Although the corporation's attempted sale and conveyance were unauthorized in law and ineffective, as such, to pass any title from itself to its vendees, its action in that connection was, nevertheless, in legal contemplation, and, in fact, an abandonment of its easement in so much of Washington avenue, and through that abandonment the strip of ground in question ceased to be a part of the public street, and by operation of law reverted to the owner of the ultimate fee.

By competent terms of the amended charter (Acts 1881, Ch. 167, Sec. 1, Code Union City, p. 5, Sec. 7), the Board of Mayor and Aldermen of the town were clothed with plenary power "to open, alter, abolish, widen, extend, establish, grade, pave, or otherwise improve, clean, and repair streets and alleys." In this instance, with all requisite formality, it *extended* Harrison street and *altered* Washington avenue at the same time. The ordinance adopted expresses the judgment of the board with respect to the expediency of both changes and distinctly defines the extent of each, the combined action being based on the twofold proposition "that it is to the manifest interest of the corporation that Harrison street be extended," as stated, and that "Washington avenue, between Depot street and First street, is wider than necessary" by 41 feet. After so reciting the judgment of the board upon the facts, the ordinance continues, "It is, therefore, ordered by the board that the following described portion of Washington avenue is hereby *condemned*, *set aside*, and conveyed to Beck & Bransford, to wit:" describing the strip of ground here in dispute. That ordinance and the surrender thereunder to Beck & Bransford constituted an abandonment of that portion of the street, and left open as a street, at that point for 120 feet, only the remaining 59 feet of the original width.

The fact that the board deemed Washington avenue, at that point and for that distance, "wider

than necessary," afforded a sufficient legal reason for making it narrower; and the action of the board, indicated by the other words of the ordinance "condemned" and "set aside" (which in this connection mean the same as *vacated* or *excluded from the future limits of the street*), was within its power, being clearly embraced in each of the charter words "alter" and "abolish."

The board first decided that the particular part of Washington avenue was "wider than necessary," and then vacated and sold the excess. The sale was unauthorized and invalid, the vacation anthorized and valid. Payment of a consideration gave no virtue to the unauthorized sale, nor detracted anything from the force of the vacation. The legal effect of vacation is the same with or without compensation; it inevitably terminates the municipal easement and causes a reverter to the owner of the ultimate fee, whoever he may be.

This board had the power to determine for the municipality and the entire public how much of Washington avenue was needed for street purposes and to reject the balance, and the Courts, though feeling as we do that this change greatly impaired the beauty and symmetry of the town, are without jurisdiction to revise its judgment in that matter or to compel it to maintain the street from one extremity to the other at its original width.

Not only did the board presiding in 1884 *condemn and set aside*, or vacate, or reject, or aban-

don, or discontinue this part of the street as unnecessary for the public use, but no succeeding board seems to have raised a dissent in any form, and the present one is shown to have declined to do so by even the slightest participation in this litigation. The corporation stands by its action, taken more than fifteen years ago, and the suit proceeds with only a private citizen and individual property owner as relator.

Authorities are abundant for the proposition that a municipal corporation, being the State's representative, may ordinarily vacate, discontinue, or abandon its easement in a street or part thereof, whenever by its proper board found to be unnecessary for public use. Dillon Minn. Corp. (4th Ed.), Sec. 666 ; Elliot Rds. & Sts., (2d Ed.), Sec. 871 ; Lewis Emi. Dom., Sec. 134 ; Randolph Emi. Dom., 409 ; *Anderson* v. *Turberville*, 6 Cold., 150, 157 ; 26 L. R. A. 828 note.

But of course this does not mean that the rights of abutting owners affected by the change can be lawfully ignored, for such rights must in each case be reasonably preserved, or compensation paid for the injury done them. Elliott Rds. & Sts., Secs. 877 & 871 ; Lewis Emi. Dom., Sec. 134 26 L. R. A. 828 note.

The last observation, however, is of small moment to the relator, since his property does not abut on Washington avenue but is situated on other

streets, Mary and Depot, more than 500 feet away.

Though not technically derainged, the title of Beck & Bransford to the lot abutting on that part of Washington avenue vacated and surrendered to them is assumed throughout the record and not disputed. But, whether they or some one else in fact owned that lot with the ultimate fee to the center of the street, the result of this litigation, so far as the complainant is concerned, must be the same, since that act of the corporation terminated its easement in the vacated part of the avenue, and left it no interest therein to be protected by the Court's decree.

Let the decree below be reversed, the injunction dissolved, and the bill dismissed for the reason that the territory involved was long since vacated, abandoned, and excluded from Washington avenue by the only tribunal having power to determine the requisite width of public streets.