THOMAS COYNE *v.* CITY OF MEMPHIS *et al.*

(*Jackson.* April Term, 1907.)

1. **ACTIONS.** Two causes of action presented in a declaration are properly triable separately.

Where a declaration presents two causes of action, one, in the nature of an action for the taking of property, demanding damages resulting from the impairment of the value of property abutting on a street by lowering the grade of the street, and the other, for the use and occupation of the house on the premises. a striking out of the last cause of action by the court and a direction that it be tried in a separate action, or before a separate jury is proper. (*Post, pp.* 654-661.)

2. **DECLARATION.** Allegation of combination and confederation ignored as surplusage. when out of harmony with the whole declaration.

An allegation of combination and confederation of the defendants made in a declaration, when out of harmony with the whole substance of the declaration, may be ignored as mere surplusage. (*Post, pp.* 659-661.)

3. **MUNICIPAL CORPORATIONS.** Liability for damages for impairment of ingress and egress to and from lots abutting on streets.

A municipal corporation, together with railroad corporations, in changing the grade of a street becomes liable in damages for compensation for the impairment of the easement or right of ingress and egress to and from a lot abutting thereon, in an action for such compensation, and not for the tort or trespass; and peremptory instructions for defendants in such case under the facts of the case is erroneous. (*Post, pp.* 661-677.)

Code cited and construed: Secs. 1985-1988 (S); Secs. 1665-1667 (M. & V.); secs. 1392-1394 (T. & S. and 1858).

Acts cited and construed:   Acts 1891, ch. 31.

Cases cited and approved: Railroad v. Adams, 3 Head, 596, 600; Anderson v. Turbeville, 6 Cold., 150; Nashville v. Nichol, 3 Bax., 340; Gray v. Knoxville, 85 Tenn., 99; Telegraph and Telephone Co. v. Railroad, 93 Tenn., 522; Hamilton Co. v. Rape, 101 Tenn., 222; Barron v. Memphis, 113 Tenn., 89.

Cases cited and distinguished: Humes v. Knoxville, 1 Humph., 408; Railroad v. Bingham, 87 Tenn., 530; Smith v. Railroad, 87 Tenn., 630;   Chattanooga v. Neely, 97 Tenn., 529; State v. Taylor, 107 Tenn., 463.

4.  CONSTITUTIONAL LAW.  Statute excepting a city from liability for change in grade of street resulting in impairment of ingress and egress is unconstitutional.

A statute (Acts 1901, ch. 153) providing that certain cities, meaning the city of Memphis, shall be excepted from a statute (Acts 1891, ch. 31) authorizing a recovery of damages by property owners, caused by changing the grade of streets, is unconstitutional, because it denies compensation for private property taken for public use, and does not protect a city from liability for the impairment of an easement or right of ingress and egress to and from a lot abutting on a street, caused by a change in the grade of the street. (*Post, pp.* 673-675.)

Code cited and construed:  Secs. 1985-1988 (S.); secs. 1665-1667 (M. & V.); secs. 1392-1394 (T. & S. and 1858).

Acts cited and construed:   Acts 1879, ch. 11; Acts 1881, ch. 96, sec. 5; Acts 1891, ch. 31; Acts 1893, ch. 41; Acts 1897, chs. 156, 195, 215, 222, 277; Acts 1901, ch. 153.

Constitution cited and construed:   Art. 1, sec. 21; art. 11, sec. 8.

Cases cited and approved: Chattanooga v. Neely, 97 Tenn., 529; Hamilton Co. v. Rape, 101 Tenn., 222; Goodbar v. Memphis, 113 Tenn., 33; Barron v. Memphis, 113 Tenn., 89.

Case  cited and distinguished: Humes v. Knoxville, 1 Humph., 408.

Coyne v. Memphis.

5. **MUNICIPAL CORPORATIONS.** Right of access of abutter owning to margin of street is same as that of owner to center of street.

An abutting owner, whose line extends only to the margin of the street, has the same right of ingress and egress in respect of of his abutting property to and from the street, as one, whose line extends to the middle of the street, has. (*Post, pp.* 665, 670, 675, 676.)

Cases cited and approved: Railroad v. Bingham, 87 Tenn., 530; Smith v. Railroad, 87 Tenn., 630; Hamilton Co. v. Rape, 101 Tenn., 222; Brumit v. Railroad, 106 Tenn., 124.

6. **SAME.** Same. Compensation is not denied because change of grade of street is made in exercise of the police power.

An abutting owner is entitled to compensation for the impairment of his easement of access to and from his abutting premises, resulting from the change of the grade of the street, though the change be made in the exercise of the police power by lowering the street for the passage of ordinary traffic and for the construction of an elevated railroad resting on supports, but at the level of the street before the change was made. (*Post, p.* 676.)

Acts cited and construed: Acts 1881, ch. 96, sec. 5.

Case cited and overruled: Williams v. Taxing District, 16 Lea, 531.

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County.—J. P. YOUNG, Judge.

EDGINGTON & EDGINGTON, for plaintiff.

THOS. H. JACKSON, JAMES L. MCREE, and A. W. BIGGS, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Shelby county to recover damages for a permanent injury inflicted upon the property of the plaintiff in error by the defendant city and by the Chicago, St. Louis & New Orleans Railroad Company and the Illinois Central Railroad Company. The circuit judge gave a peremptory instruction in favor of the defendants, and verdict and judgment were rendered accordingly. From this action of the court an appeal has been prayed to this court, and errors have been assigned.

The declaration contains the following averments:

That on or about July 22, 1902, the plaintiff became the owner of lot No. 3, in block 67, in Willoughly Williams' subdivision of lands located in Shelby county, and State of Tennessee, in that part of the city of Memphis known as Ft. Pickering, the lot being described as follows:

"Beginning at a point which is the southwest corner of Jackson street, or Iowa avenue and Eighth street, or Texas avenue, and running thence west, and with the south line of Iowa avenue, 32 feet; thence south 177½ feet to an alley; thence east, and with the line of said

alley, 32 feet to the west line of Eighth street, or Texas avenue; thence north, and with the west line of Eighth street, or Texas avenue, 177½ feet to Jackson street, or Iowa avenue, the point of beginning."

That on the date above mentioned there was on the lot a good, substantial dwelling house, together with other buildings, outhouses, and fences, and that the dwelling house was occupied by tenants; that on the date mentioned plaintiff's buildings and improvements were on a level with the street in front—that is, with Iowa avenue in front and with Texas avenue on its east side; that some months after he became the owner of the property the defendants began excavating on the north and east sides of the lot, and they continued their excavations until they were completed, within a year from the date when the present suit was instituted; that during this period defendants excavated Iowa avenue to a depth of about eighteen feet below the level of the lot, and built walls on the north and south sides of this avenue sixteen feet high along the entire thirty feet front, and beyond in both directions, of plaintiff's lot; that on the east side the defendants excavated Texas avenue to a depth of about eighteen feet, and here they also built a wall; that by these excavations and changes the defendants placed the present grade of both Iowa and Texas avenues about eighteen feet below the former grade of these avenues, as they existed at the time the plaintiff became the owner of the lot above described.

It is further alleged that these excavations were made

for the purpose of creating a subway, for the passage of the ordinary traffic of the city, to protect it from the passage of the trains of the railway companies above mentioned, the tracks of the latter being elevated above the subway; that, while this structure is a great convenience both to the railroads and to the public, it has greatly injured the value of the plaintiff's property, both as residence property and for business purposes.

The defendants pleaded the general issue. The railroad companies accompanied the general issue with notice of a special defense to the effect that this subway had been constructed by the companies under a requirement made by the city.

There was evidence introduced in the court below in support of the substance of the declaration as above set forth. There was also evidence that, prior to the construction of the subway, a contract had been entered into by the city and the railroad companies, which contained, among other things, not necessary to be referred to, the following provisions:

"First. The Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company are required to build a subway on Iowa avenue, beginning at a point in or near Main street, continuing westwardly in and along said Iowa avenue, and under petitioner's tracks, to a point in or near Florida avenue; said subway to be built under the supervision and direction of the city engineer. The city is to excavate the approaches to the line of said railroad right of way, and

the Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company are to do all the rest of the work, and are to pave and wall with stone and otherwise protect the entire length of said subway, so. as to give complete and ample protection to any and all persons using the same, and the said Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company are to hold the city harmless from any and all damage that may arise from the use of the same by the public; and in the event that the city shall require or allow the street railway company to place its tracks on Iowa avenue in and along the subway, then said street railway company shall be required to pay said Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company thirty (30) per cent. of the cost of construction of said subway. . . .

"Thirteenth. The said second parties are to keep all the grounds and premises occupied by them free from all manner of nuisance and in suitable repair and good condition, and they are to do all of the work and make all of the improvements that are or may be necessary upon the aforesaid premises, and any-other premises occupied, in order to the proper use of said premises, and every part thereof, but they are not to change the grade of any street or public ground without the previous consent of the first party, and said first party is not to be called on to make any expenditures or to do any work thereon or

on account thereof at any time; and said second parties are to pay all damages they or their employees may occasion to persons or to private property, and are to indemnify and save harmless the first party from and against all losses of every description and all claims and damages occasioned either directly or indirectly, or to occur against or to result to said first party on account of the privileges hereby granted, or the exercise of the same, or the occupation of said premises by the said second parties, or any one under their authority or permission, or by the use of the same by others under it."

This contract also contained a provision that the railroad companies would defend, on their own account and at their own expense and costs, all suits arising out of the doing of the work, either directly or indirectly, and that they would hold the city harmless from all damages and losses to accrue by reason of such suits, or the results thereof, in any and every manner, and that the railroad companies would assume and pay all such losses and damages themselves.

There is evidence to the effect that in front of the plaintiff's lot, and between it and the edge of the parapet overlooking the street below, as excavated for the subway, there was left a strip of ground fourteen feet wide, and of this four feet was occupied by a concrete sidewalk. Between the sidewalk and the edge of the parapet there was a space of about ten feet covered with broken stone. Wagons could approach the place in this manner from the front, but it does not appear that they could

turn around. Some two hundred feet west of the plaintiff's lot there was a bridge across the subway, by which the house on plaintiff's lot above the subway could be approached. Leading down the face of the parapet there were steps, and in this manner access might be had to the subway, and from the subway to the lot, by pedestrians. The ordinary access, however, from the street or subway as it existed before the grade was lowered, has been wholly destroyed. There is evidence to the effect that his deprivation has decreased the value of the property to the extent of at least $3,000.

We have given above the full substance of the declaration, except in two particulars. One of these exceptions consists in the fact that there is a paragraph inserted in the body of the declaration, having little connection with its context, in the following language:

"Plaintiff alleges that said defendants, each and all, combined and confederated in one common purpose, and unlawfully."

The other exception is an averment, composing the last paragraph, in the following words:

"Plaintiff alleges that, in addition to the wrongs and injuries complained of, the said defendants combined and confederated together and took forcible possession of said dwelling house and premises, and drove out the tenants of plaintiff, and occupied the dwelling as a toolhouse and for other purposes, and they retained possession of same until about the 1st day of May, 1905, to the great loss and damage of plaintiff in injury to said

dwelling house, buildings, and fences, and in the loss of the rents and profits of said property."

The circuit judge held that this paragraph presented a cause of action distinct from the residue of the declaration, and struck it out of the present suit, and directed the issue presented by that clause to be tried in a separate action, or before a separate jury.

This action of the court is assigned for error.

The determination of this question involved also a consideration of the effect of the previous paragraph quoted from the declaration.

It is insisted on behalf of the defendants, we suppose from the presence of the short paragraph first quoted, that this is an action of tort. The plaintiff's counsel, while treating the action in all other respects as one brought to recover for an injury done to the property by the destruction of its access to the street, and hence in the nature of an action to recover for a taking of the plaintiff's property, when they come to consider the propriety of the court's action in striking out the last paragraph, treat the action as one brought for pure tort, and make the argument that a single action may be maintained for all of the consequences of a tort.

It is necessary that we construe the declaration.

The declaration presents two causes of action—one, the impairment of the value of the property by the lowering of the grade of the street; the other, for use and occupation of the house as a receptacle for the tools of the railway company. The order of the circuit judge

in respect of the last cause of action was correct. The paragraph quoted, "That said defendants, each and all, combined, and confederated in one common purpose, and unlawfully," is so out of harmony with the whole substance of the declaration that it may be ignored as mere surplusage. We have, in the beginning of this opinion, presented the declaration as it stands denuded of the two incongruous paragraphs. It appears to be, from this presentation, an action to recover for the impairment of the value of the property by the construction of the subway or the lowering of the grade.

The question presented is whether the facts alleged and proven, along with the other facts above set forth as having been proven at the trial, show a case for relief.

In support of the action of the circuit judge in directing a peremptory instruction, we are referred by counsel of the city and counsel for the railroad companies to *Humes* v. *Mayor of Knoxville,* 1 Humph., 408, 34 Am. Dec., 657; *Chattanooga* v. *Neely,* 97 Tenn., 529, 37 S. W., 281; *Railroad* v. *Bingham,* 87 Tenn., 530, 11 S. W., 705, 4 L. R. A., 622; *Smith* v. *Railway,* 87 Tenn., 630, 11 S. W., 709; *State* v. *Taylor,* 107 Tenn., 463, 64 S. W., 766; Acts 1879, p. 15, c. 11; Acts 1901, p. 272, c. 153, amending Acts 1891, p. 67, c. 31.

In opposition to the instruction we are referred by plaintiff's counsel to *Anderson* v. *Turbeville,* 6 Cold., 150; *Gray* v. *Knoxville,* 85 Tenn., 99, 1 S. W., 622; *Hamilton County* v. *Rape,* 101 Tenn., 222, 47 S. W., 416;

*Mayor* v. *Nichol,* 3 Baxt., 340; *Telegraph & Telephone Co.* v. *Electric Ry. Co.,* 93 Tenn., 522, 29 S. W., 104; *Barron* v. *City of Memphis,* 113 Tenn., 89, 80 S. W., 832, 106 Am. St. Rep., 810; Code 1858, sections 1392-1394, and chapter 31, p. 67, of the Acts of 1891.

There are several contentions in respect of the statutes and sections of the Code referred to, on both sides, and also certain other questions which will be discussed, so far as is deemed necessary to a proper disposition of the cause.

*Humes* v. *Mayor of Knoxville* presents the following case: Humes and wife were the owners of a lot on Prince street. The city graded Prince street at a distance of about eight feet from Hume's stable. The grade of the street was lowered, also, to a depth of between six and eight feet. The result was that the stable was very materially injured. The action was "trespass on the case." Among the facts found there was a finding to the effect that there was no other motive actuating the corporation than the improvement of a public street for the convenience of the inhabitants of the city. This court held that there was no ground of action. The reason given was "that if a man does what he has a right to do upon his own land, without trespassing upon any law or custom, or the title or possession of another, he is not liable to damage for injurious consequences, unless he does it, not for his own advantage, but maliciously; and the damage shall be considered a casualty for which he is not censurable." In illustration of this

it was said that a person about to erect a house contiguous to another might lawfully sink the foundation of it below that of his neighbor's house, and not be liable for the damages which his neighbor might sustain in consequence of it, provided it was unintentional, and he had used reasonable care and diligence in digging on his own ground to prevent any injury to his neighbor.

The conclusion drawn from the authorities cited was that every proprietor of land, where not restrained by covenant or custom, has entire dominion of the soil and the space above and below to any extent he may choose to occupy it, and that in this occupation he may use his land according to his own judgment, without being answerable for the consequences to an adjoining owner, unless by such occupation he intentionally or from want of reasonable care and diligence inflicts upon him an injury.

In applying this principle it was said that the corporation was the proprietor of the public streets of the city, which is held in trust as easements for the convenience of its citizens, and as such proprietor it had the power to grade, macadamize, or do anything else for the improvement of the streets, whereby they might be made to answer the end for which they were designed; and if in the exercise of this power the property of any individual should be rendered less valuable, either by being elevated above or depressed below the common level, no recovery could be had unless it should further ap-

pear that the city had inflicted the injury wantonly or from neglecting to use reasonable diligence and care.

In *Chattanooga* v. *Neely* the case of *Humes* v. *Mayor of Knoxville* was referred to only in passing. The question in the case was whether the rights of action which the plaintiff claimed could be enforced under the sections of the Code above referred to, or were to be enforced under chapter 31, p. 67, of the Acts of 1891. The conclusion stated was that the latter act had superseded the sections of the Code mentioned, and controlled the controversy.

In *Railroad* v. *Bingham,* it appeared that Mrs. Bingham was the owner of a block of lots fronting on Sixth street, in the city of Memphis, upon one end of which she had erected four frame dwelling houses; that at the time she sustained the damage for which she sued she was in the receipt of a monthly rental of $40 from these houses; that, after her property had been thus improved, Sixth street, including that part in front of her tenements, was occupied by the Iron Mountain Railroad Company, by the construction thereon of two railway tracks, over which it passed its trains in reaching its depot in the city; that the suit was brought to recover damages sustained by her property in the use of the street by the railroad company.

Among other grounds of action stated in the declaration as summarized in the opinion of the court were these:

"Second. Damages consequent from the grading of

the street by the railroad company. Third. Damages by obstruction of her right of ingress and egress by lawful occupation and user of street by railway company."

As preliminary to the disposition of these two grounds of action the court construed the deed of Mrs. Bingham as confining her to the margin of the street. It was then said that, as no part of her freehold had been taken or occupied by the railroad company, her damages should be limited to such injuries as she could show herself to have sustained as the owner of a mere easement in the street in front of her premises; that the railroad was not a trespasser upon the street, having placed its tracks there under license and authority from the city government, which power had been delegated to the latter by the legislature; that the running of railroad trains along a residence street, without any actual obstruction of the right of an abutting owner to light or air, or ingress and egress to and from his premises, would in most cases be regarded as injurious to the property of a lot owner, caused by the discomfort and inconvenience of the mere passage of trains in front of his premises, and unpleasant odors and disagreeable noises at inconvenient hours, but that these would not support an action where the road was lawfully upon the street; that no action will lie by an abutting lot owner, who does not own the fee in the street, for injuries which merely result from the legal and reasonable use of a public street by a railway company, and which leaves his right of egress and ingress reasonably sufficient.

It is now to be observed that, both in tabulating the grounds of action stated in the declaration and in the consideration of these grounds, the court made a distinction between "damages consequent from the grading of the street" and "damages by obstruction of her right of ingress and egress."

Upon the first of these the court said that the plaintiff was precluded, under the authority of *Humes* v. *Knoxville;* and *Gray* v. *Knoxville,* 85 Tenn., 99, 1 S. W., 622, was distinguished on the ground that in the latter case it appeared that the city, by throwing surface water on the property of the plaintiff, thereby injuring his cellars, walls, shrubbery, etc., and knocking down the fences in the course of grading, had taken and applied defendant's property to public uses. It was said that, as thus understood, that case was in no wise inconsistent with *Humes* v. *Knoxville;* that, as the grading was not done in a negligent or improper manner, the plaintiff would be entitled to no damages on that ground. The court then said: "The next contention is, that if it be conceded that the railway company has the legal right to maintain its tracks upon this street, and that it has been lawfully using these tracks for its usual and necessary business, that nevertheless this lawful use has so obstructed the right of ingress and egress as to amount to a destruction of her easement in the street. Excluding the sidewalks, the width of the street between curbing is forty-four feet. The tracks are two in number, and are in the center of the street. The space between

the outer rail and the curbing is 12½ feet. The iron rails are so laid as to be flush with the level of the street, and are therefore little obstruction to the ordinary use of the street. The clear space on either side of the tracks is wide enough for an ordinary vehicle when the tracks are in use by the company. About fourteen regular trains use these tracks each twenty-four hours. Thus the whole street is practically free and unobstructed for much the greater part of the time. The proof abundantly shows that, since the tracks have been laid and the street paved, its use for ordinary traffic has greatly increased in spite of the dangers and inconveniences incident to the movement of trains. That the street may not be so safe or agreeable for driving as without the railroad tracks is not to be disputed; but that the mere right of egress and ingress, which is appurtenant to every abutting owner on this street, has been destroyed or materially obstructed, is not proven by the facts of this case. The lawful and prudent use of the privileges conferred by the city upon this street to the railway company is not such as to amount in any sense to a taking of her right of easement in the public street, or to a substantial destruction of her rights therein. Not owning the fee in the street, she has no right of complaint so long as her right of egress and ingress is reasonably sufficient, where the occupation of the street by the railway company is lawful."

*Smith* v. *Street Railroad* is in the main wholly for-

eign to the present inquiry, but does here and there contain some passages which are applicable. It is therein said: "Each abutting lot owner has an easement of way in the public street which the law recognizes as his private property. *Anderson* v. *Turbeville*, 6 Cold., 158." Again it is said: "Her only private property in the street is her right of ingress and egress. She has no other right or interest in the street which is not to be enjoyed equally by each and every member of the community and the public generally."

In the case of *Anderson* v. *Turbeville*, wherein the court was considering the power of a city to close a street previously established, after conceding that the city had the power to abandon the public use of it, and to be exonerated from the obligation to keep it in repair and otherwise in a condition suitable for public use, it was added: "But the owners of lots bordering upon a public street have an easement of way in the street, in addition to the use of it in common with the people generally. This additional right of way is private property, within the protection of the law, as much as if it were corporeal property, and cannot be taken for public use without compensation. Like any other property, it may be taken for public use, upon compensation [citing authorities]. As to the easement of private way, the municipal corporation does not represent the owners of it. A decree wherein those owners are not parties or privies is not binding upon them, and does not deprive them of their rights of property."

The court therefore held that a decree in chancery closing a street, rendered in a suit wherein the city and one of the abutting owners was a party, was without effect as to the other owners of lots bordering on the old street, so far as related to their easement of private way.

In *Hamilton County* v. *Rape* it appeared that the defendant in error owned a lot abutting on a street lying in an unincorporated suburb of Chattanooga; that in 1895 Hamilton county put down the grade in front of the property from three to seven feet, whereby the defendant in error's easement of access, or of ingress and egress to and from the lots, was injured, and he sued to recover on this ground. Speaking to this subject the court said that the abutting owner "has a right of ingress and egress to his property—or, as it is called, an easement of access—and if this is taken away, or if it is impaired or incumbered without his consent, it is a taking of his property for public purposes, for which he is entitled to compensation. . . . This right of ingress and egress may be valuable or not and may be of more or less value, according to the location of the property. Thus, in the country districts, when a grade is changed through a man's farm, the right of ingress and egress may, at any particular point, be of little or no value, and for it the abutting owner would be entitled to little or no damages; but in case of suburban property a way of ingress and egress to the front of every lot is a matter of importance, and the destruction or impairment of

such way is a proper matter for compensation to the extent of the value of the right thus taken away. It is not a question of tort under the pleadings, but of taking a valuable property right without compensation," etc.

It was said that *Humes* v. *Knoxville* was in apparent conflict with this holding, but that case was distinguished on the ground that the action there was for a tort, and the questions of taking property and the subsequent right to compensation were not considered; that likewise in the case of *Railroad* v. *Adams,* 3 Head, 596, 600, where the action was for a tort, the distinction between actions of tort for injuries to real estate and for compensation for its taking was considered and plainly drawn. The court held that the impairment of the ingress and egress by cutting down of the grade was a proper ground for action, and affirmed a judgment of $650 therefor.

It is immaterial that in the case of *Hamilton County* v. *Rape* the abutting owner owned the fee to the center of the street, since the right of access is the same in one who owns only to the margin as in one who owns to the center.

In *State* v. *Taylor,* where the question arose in respect of closing a street, it was said: "Authorities are abundant for the proposition that a municipal corporation, being the State's representatives, may ordinarily vacate, discontinue, or abandon its easement in a street, or part thereof, whenever by its proper board found to be unnecessary for public use [citing authorities]. But,

of course, this does not mean that the rights of abutting owners affected by the change can be lawfully ignored; for such rights must in each case be reasonably preserved, or compensation paid for the injury done them."

In Taylor on Corporations it is said: "To constitute a taking of property, it is not necessary that any material thing be actually taken. It is enough if any right of the owner respecting the thing owned be impaired, so that he cannot apply the thing to all the uses of which it was formerly capable. The legislature cannot authorize either a direct or a consequential taking or injury to property without compensation; and if a corporation voluntarily, for its own benefit, so constructs a work as necessarily to injure the property (that is, the thing owned) of an individual, or deprive him of any right he may possess regarding the thing which he owns, or his rights therein, it will be bound to compensate him for his damages, even though the work be properly and lawfully construed." Id., sections 173, 473.

In Wood on Nuisances: "Wherever the exercise of the right asserted operates to destroy an easement incident to real property, or amounts to an actual physical invasion of property by some agency that produces injury thereto, or imposes a burden thereon, this is a taking of property." Id., section 762.

Again it is said: "The legislature cannot confer upon a corporation the right to do any act that imposes a burden upon the property of others, that amounts to an actual taking of property for public purposes, so as to

exempt such corporation from liability for all damages that result from the exercise of their franchises, that in law amount to a taking of property." Wood on Nuisances, section 759.

All of the foregoing excerpts have been approved by this court. 93 Tenn., 522, 29 S. W., 104, *et seq.*

We are now ready to consider the sections of the Code and the statutes referred to.

As to the sections of the Code (Code 1858, sections 1392, 1393, 1394; Mill & V. Code, sections 1665-1667; Shannon's Code, sections 1985-1987), we have already had occasion to remark that they were superseded by chapter 31, p. 67, Acts of 1891, according to the holding in *Chattanooga* v. *Neely,* supra. This act, and an amendment thereto embraced in chapter 41, p. 53, Acts of 1893, are comprised in section 1988 of Shannon's Code, which reads as follows:

"When any owner of real estate in any town or city in the State of Tennessee shall sustain any damage to his property by reason of any change made in the natural or established grade of any highway or townway in any city or town in the State, or by reason of the raising or lowering of such grades, or other acts done for the purpose of improving or repairing such ways, the said owner shall be paid all damages therefor by such cities and towns within said State, which damage may be recovered before any court of competent jurisdiction, at any time in one year from the completion of or the cessation of such works, acts, or improvements; but all bene-

fits accruing by reason of such improvements, acts or works shall be allowed to affect, reduce and offset the damages herein provided for."

The amendment made by the act of 1893 was simply that "all benefits accruing by reason of such improvements, acts or works shall be allowed to affect, reduce and offset the damages hereinbefore provided for."

The residue of the section quoted is from chapter 31, p. 67, Acts of 1891. This latter act was amended by chapter 153, p. 272, Acts of 1901, by adding the following words: "Provided, that this act shall not apply to cities or trading [taxing] districts, organized or existing under the act approved January 29, 1879, entitled 'An act to establish taxing districts in this State, and to provide means of local government for the same,' and acts amendatory thereof."

Memphis falls within the act of 1879 referred to. *Goodbar* v. *Memphis,* 113 Tenn., 33, 81 S. W., 1061. Indeed, there are several statutes in which chapter 11, p. 15, Acts of 1879, and the statutes amendatory thereof, are spoken of as comprising the charter of the city. Acts 1897, p. 343, c. 156; Acts 1897, p. 412, c. 195; Acts 1897, p. 516, c. 215; and Acts 1897, pp. 528, 601, chs. 222, 277.

It is insisted that the amending act of 1901 is uncon stitutional, because in violation of section 8 of article 11 of our State constitution, in that the classification by which Memphis is excluded from the operation of

118 Tenn—43

the general act (chapter 31, p. 67, Acts of 1891) is "unnatural, arbitrary and capricious."

We do not think it necessary to go into this question in its general aspect, since there can be no doubt of the unconstitutionality of the act, in so far as it could be construed as denying to any citizen compensation for property appropriated to public use. A similar conclusion was reached in *Barron* v. *Memphis,* wherein it was held that a similar statute (Acts 1881, p. 112, c. 96, sec. 5), purporting to exempt the city from liability "for damages or injuries to persons or property by reason of defects in the streets or alleys, or other property under the control and within the taxing district, or for the conduct of those managing the affairs of such districts," was unconstitutional to the extent that it might be construed as attempting to authorize the taking of private property for public use without compensation. In that case it appeared that the city had so enlarged and so constructed the central pier of a bridge extending over Bayou Gayoso as that it stood, when completed, at a small angle across the stream, with the result that the current of the stream was diverted and thrown across the lot of Mrs. Barron, which eventuated in the erosion of the lot and the undermining of the house to such an extent as to practically ruin the former and compel the removal of the latter. It was held that this was a taking of Mrs. Barron's property, within the meaning of section 21, art. 1, of our State constitution, which declares that "no man's . . . property shall be taken or applied

to public use . . . without just compensation," and that the act of 1881 referred to could not protect the city from liability therefor.

For the same reasons the act of 1901 cannot protect the city from liability for the impairment of plaintiff's easement of access to his lot—his right of ingress and egress to and from Iowa avenue and Texas avenue—resulting from the depression of the grade of the street to the depth of eighteen feet below the surface of the lot. This was a taking of plaintiff's property—his right of ingress and egress. The city being liable, of course the defendant railway companies are also liable.

We deem it unnecessary to distinguish *Humes* v. *Knoxville*, from the fact that this has been done already in the case of *Hamilton County* v. *Rape*. We have already stated what was said in that opinion upon that subject.

The authority of the case last cited is questioned in the brief of the city, because the abutting owner whose right were under examination in that case owned to the center of the street, while the abutter in the present case owned only to the margin. The distinction is truly stated, but does not impair the applicability of the case, because, as we have already indicated, an abutter, whose line extends only to the margin of the street, has the same right of ingress and egress in respect of his property to and from the street that one has whose line extends to the middle of the street. *Railroad* v. *Bingham,*

supra; *Smith* v. *Strcet Railway Co.*, supra; *Brumit* v. *Railroad*, 106 Tenn., 124, 134, 60 S. W., 505, *et seq.*

We are referred to *Williams* v. *Taxing District*, 16 Lea, 531, as a persuasive authority in support of the constitutionality of the act of 1901, in view of the fact that that case upheld the constitutionality of section 5, c. 96, p. 112, of the Acts of 1881, above quoted. But even that act, as we have already shown, has not been able to stand the test of constitutionality, when adduced as sanctioning the taking of private property for public use without due compensation.

It is insisted for the defendant railway companies that the tracks were elevated above the grade of the street in the exercise of the police power, and for that reason no recovery can be had by the plaintiff. The change was made, not by elevating the tracks of the railway companies, but by lowering the grade of the street; the tracks being left at the same level as before, of course, however, resting on supports, instead of on the bed of the street. But the fact that this disposition of the tracks, as between the city and the railway companies, was made through the exercise of the police power (however, it seems to have been the subject of contract between the city and the companies), could not result in depriving the plaintiff of his right to compensation for the taking of his property, as a result of reducing the grade of the street. The opposite conclusion would be a *non sequitur*.

For the reasons indicated, the action of the court be-

Coyne v. Memphis.

low in giving a peremptory instruction for defendants was erroneous. The jury should have been permitted to pass upon the questions whether there was an impairment of the easement of access, and the extent of it.

The judgment of the circuit court must therefore be reversed, and the case remanded for a new trial.