STATE of Tennessee, ex rel. Dwight
KESSEL, Plaintiff–Appellant,

v.

Victor ASHE, and the Knoxville City
Council, Ed Shouse, Ed Bailey, Gary
Underwood, Jean Teague, Ivan Harmon,
Carlene Malone, Larry Cox, and Wil-
liam V. Powell, Jr., Members of the
Knoxville City Council, Defendants–Ap-
pellees.

Supreme Court of Tennessee,
at Knoxville.

Oct. 31, 1994.

Michael W. Moyers, Senior Deputy Law
Director for Knox County, Knoxville, for
plaintiff-appellant.

Thomas A. Varlan, Law Director for the
City of Knoxville, Debra C. Poplin, Asst. City
Atty., Knoxville, for defendants-appellees.

## OPINION

DROWOTA, Justice.

In this action contesting an annexation or-
dinance, the plaintiff Knox County appeals
from the Court of Appeals' judgment revers-
ing the trial court's denial of the defendant
City of Knoxville's motion to dismiss—which
alleged that the County lacked standing to
contest the ordinance. This appeal presents
a single issue for our determination: whether
the County's interest in certain roadways
located within the territory sought to be
annexed is sufficient to qualify the County as
an "aggrieved owner of property" as re-
quired by Tenn.Code Ann. § 6–51–
103(a)(2)(A), thereby conferring upon the
County standing to contest the annexation.
For the reasons set forth below, we hold the
County's interest in the roadways does not
satisfy the statutory requirement; therefore,
we affirm the judgment of the Court of Ap-
peals.

## FACTS

The facts giving rise to this action are not
disputed. On July 15, 1991, the Knox Coun-
ty Board of Commissioners accepted the ded-
ication of two roadways, Power Drive and
Dresser Road, both of which are located
within the "Power Park" subdivision. The
minutes of the Board meeting reflect that
these two roadways, which are 2,820 feet in
length and 70 feet wide, are owned by Power
Properties Ltd. and Three Partners, Ltd.

On June 23, 1992, the Knoxville City Coun-
cil passed Ordinance No. O–174–92, seeking
to annex approximately 86.66 acres in south-
west Knox County. This parcel includes

land that is part of the "Power Park" subdivision.

On July 22, 1992, Knox County filed an action, pursuant to Tenn.Code Ann. § 6–51–103, to contest the reasonableness of ordinance No. O–174–92. Because § 6–51–103(a)(2)(A) requires that any person wishing to challenge an annexation ordinance be "an aggrieved owner of property which borders or lies within territory which is the subject of an annexation ordinance," the County asserted that its ownership of Power Drive and Dresser Road by the dedication process established its standing to challenge the ordinance.

The City filed a motion to dismiss, or in the alternative for summary judgment, alleging that the County did not have standing to challenge the ordinance because its interest in the roadways was insufficient to qualify it as "an aggrieved owner of property" under § 6–51–103(a)(2)(A). The trial court denied the motion, but granted the City's request for an interlocutory appeal of its ruling.

The Court of Appeals reversed the judgment of the trial court. In a brief opinion, the Court first noted that construing the term "aggrieved owner of property" so as to embrace the County's interest in the roadways "would result in a county being able to challenge each and every annexation ordinance passed by a municipality if the annexed area encompassed a county road." This, the Court stated, was unacceptable, for it did "not believe that the legislature intended to create such a fertile field for litigation."

Knox County applied for permission to appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure. We granted the application to resolve this issue of first impression.

## ANALYSIS

▮ In order to determine if the County's interest in the roadways satisfies the requirement of § 6–51–103(a)(2)(A), we must first determine the nature of that interest. This is straightforward because longstanding law provides that when property is dedicated to a governing body for public use, the governing body acquires only an easement in the property, and the fee remains in the dedicator, or in the abutting landowners where the property conveyed is for a street or highway. *City of Memphis v. Overton,* 216 Tenn. 293, 392 S.W.2d 98, 100 (1965); *Jacoway v. Palmer,* 753 S.W.2d 675, 677 (Tenn.App.1987). Therefore, the County does not own the fee title to the roadways, but has at most only an easement or right-of-way.

The County concedes that it does not own the fee. It argues, however, that this is irrelevant to the question before us because the term "owner of property" is not in general usage limited to the holder of the fee, but has been construed by many authorities to include the holder of many types of lesser interests. The County argues that, because the term is not defined or qualified in the statute, and because the legislature is presumed to have purposefully chosen the terms it uses, the County fits within the broad statutory language. Furthermore, the County asserts that the Court of Appeals' decision was erroneous because this Court has already held, in *State ex rel. Spoone v. Mayor of Morristown,* 222 Tenn. 21, 431 S.W.2d 827 (1968), that ownership of roadways by a county is sufficient to qualify the county as an "aggrieved owner of property" under the statute.

The County is correct that the term "owner," standing alone, may encompass the holder of many types of interests, including an easement. For example, the term "owner" has been defined simply as "the person who has one or more interests." Restatement of Property § 10 (1936). The Restatement further provides that "the person who has these interests is designated both in this Restatement and in general usage as the 'owner' of them and is said to 'own' them." *Id; see also* 73 C.J.S. *Property* § 25(b) (1983). And the Restatement authors provide as an example of the general usage of the term "own": "A owns an easement over Blackacre." Restatement of Property § 10 (1936).

The fact that the term "owner" can in a general sense be used to refer to the holder of an easement does not, however, provide an answer to the question before us. Because "owner" is an elastic term, it necessarily derives much of its meaning from the context

in which it is used. *Smith v. Planning and Zoning Bd.*, 3 Conn.App. 550, 490 A.2d 539, 541 (1985); *Douglas v. Pratt*, 102 R.I. 445, 231 A.2d 486, 488 (1967). Therefore, we must look to the decisions of this Court in the area of dedication and attempt to determine the meaning of the term "owner" in that context.

This endeavor yields, at best, only mixed results. Although the abovementioned rules regarding the nature of each party's interest in the dedicated property are well established, a great deal of ambiguity exists as to the precise content of the term "owner." For example, in *State ex rel. Beckham v. Taylor*, 107 Tenn. 455, 64 S.W. 766 (1901), the Court invalidated an attempt by a municipality to sell land that had been dedicated to it for use as a public street, reasoning as follows:

> It is obvious, under our law, that the ordinance and deed in question were ineffective to pass title to any portion of Washington Avenue to the intended vendees— First, because the corporation did not own the fee in the street; and, secondly, *because the easement it did own* was not subject to sale and conveyance.... By force of its character and the general law, the corporation, upon its organization, became endowed with the proprietorship of the streets, which it received in trust as easements for the convenience of the public. [citations omitted]. So the corporation had only an easement in Washington Avenue and that, from its nature, was incapable of alienation and passage to an individual ... It is true, the amended charter [citation omitted] and also the general statute [citation omitted] confer on the board of mayor and aldermen power to 'sell and dispose of them [streets and alleys] if deemed expedient,' and that the board seems to have deemed this sale expedient; but that power relates alone to such streets and alleys as the corporation may in fact *own as so much realty*, and not to those *in which it has a mere easement;* otherwise the provision would be void for repugnancy to section 21 of article 1 of the constitution, in that its effect would be to take the ultimate fee in the soil from the *true owner* without compensation.

*Taylor*, 64 S.W. at 768 (emphasis added).

Although it did use the verb "own" with respect to both parties, the *Taylor* court nevertheless drew a marked distinction between the dedicator, whom it referred to as the "owner" or "true owner" of the land, and the municipality, whom it referred to as the holder of a "mere easement."

The same tendency to recognize only one "owner" in the dedication context, even while utilizing the verb "own" with respect to both parties, surfaces again in *Carroll County Board of Educ. v. Caldwell*, 178 Tenn. 671, 162 S.W.2d 391 (1942), where the court stated:

> *Complainants owned an easement in the land,* for school purposes. Under a common law dedication the public does not acquire a fee in the land, but simply the right to use it for purposes for which it was dedicated. The fee remains in the *owner,* and he holds it subject to the easement of the public. [citation omitted].

*Caldwell*, 162 S.W.2d at 393 (emphasis added).

Obviously, the liberal use of the terms "own" and "owner" by this Court in these representative cases hampers our current interpretive endeavor. However, other courts faced with the task of construing the protean term "owner" have crafted a helpful rule of construction. This rule provides that because of the inherent flexibility of the term, its meaning in a particular statute is to be "guided in some measure by the object to be accomplished in the particular instance." *Pinkerton v. Pritchard*, 71 Ariz. 117, 223 P.2d 933, 937 (1950); *see also Grieser v. Huntington Natl. Bank*, 176 Ohio St. 291, 199 N.E.2d 556, 558 (1964).

The application of this rule of construction to this situation yields a clear result. While it is undeniable that the objective of § 6–51–103(a)(2)(A) is to enable property owners to oppose an attempt at annexation that they believe to be unreasonable, this objective must be viewed within the context of the larger purpose of the annexation legislation—which is to provide a device whereby a

municipality may plan for its orderly growth and development. *State ex rel. Collier v. City of Pigeon Forge,* 599 S.W.2d 545, 547 (Tenn.1980); *City of Kingsport v. State ex rel. Crown Enterprises, Inc.,* 562 S.W.2d 808, 814 (Tenn.1978). Viewed in this light, we agree with the Court of Appeals that enabling a county to oppose an annexation ordinance simply because it holds easement interests in roadways within the territory to be annexed could result in a substantial increase in litigation, thus potentially undermining the overarching purpose of the legislation. Although its annexation scheme is admittedly different from Tennessee's in some respects, the Wisconsin Supreme Court voiced these same concerns in *International Paper Co. v. City of Fond du Lac,* 50 Wis.2d 529, 184 N.W.2d 834, 836 (Wis.1971), when it stated that "[m]uch litigation and problems will be avoided in these cases by the exclusion of the ownership of roads and public highways in determining the validity of the petition."

Another piece of the annexation legislation, § 6–51–111(a), provides additional support for our conclusion. That section provides:

> Upon adoption of an annexation ordinance or upon referendum approval of an annexation resolution as hereinabove provided, an annexing municipality and any affected instrumentality of the state of Tennessee, such as, but not limited to, a utility district, sanitary district, school district, or other public service district, shall attempt to reach agreement in writing for allocation and conveyance to the annexing municipality of any or all public functions, rights, duties, property, assets, and liabilities of such state instrumentality that justice and reason may require in the circumstances.

This Court has held that the phrase "affected instrumentality of the state of Tennessee" includes a county. *Hamilton County v. City of Chattanooga,* 203 Tenn. 85, 310 S.W.2d 153, 155 (1958). Furthermore, it is clear that a county's interest in dedicated roadways provides the county with none of the "benefits" of ownership, such as the right to sell or lease the property; instead, the county's interest is accompanied only by the "public function" or "duty" of maintaining the roads in a safe condition for the use of the public.

*Foley v. Hamilton,* 659 S.W.2d 356, 360 (Tenn.1983); *see also* Tenn.Code Ann. § 29–20–203(a) (imposing liability upon governmental entities for failure to properly maintain roads.) Therefore, although it is not specifically set forth in the statute, we see no reason why the broad language of § 6–51–111(a) should not cover a county holding an interest in dedicated roadways. Thus, any question concerning the transfer of a county's interest to the annexing municipality may be addressed via the § 6–51–111(a) procedure, and Knox County's lack of standing to contest the ordinance does not mean that it has no method by which to protect its interests in the roadways.

Finally, we note that our conclusion in no way conflicts with our decision in *State ex rel. Spoone v. Mayor of Morristown,* 222 Tenn. 21, 431 S.W.2d 827 (1968). Although the *Spoone* court did state that "[w]ithin this territory Hamblen County owns the roads and a school building," 431 S.W.2d at 828, it is unclear as to what type of interest the county actually held in the roads. It may well have owned the fee instead of a mere easement. Furthermore, the question presented in *Spoone* was not whether the county's "ownership" of the roads qualified it as an "aggrieved owner of property"; rather it was whether the term "owner" included legal persons, such as a county, as well as natural persons. Therefore, *Spoone* cannot be said to have decided the issue before us today.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

O'BRIEN, C.J., and ANDERSON, REID and BIRCH, JJ., concur.