HAMILTON COUNTY, TENNESSEE, Complainant-Appellee

*v.*

CITY OF CHATTANOOGA, TENNESSEE, Defendant-Appellant.

(*Knoxville,* September Term, 1957.)

Opinion filed February 6, 1958.

J. W. ANDERSON and E. K. MEACHAM, Chattanooga, for appellant.

THOMAS S. MYERS and R. M. SUMMITT, Chattanooga, ALBERT WILLIAMS, Nashville, for appellee.

PRICE & PRICE, Johnson City, *amicus curiae* for Tenn. Municipal League.

SHELTON LUTON, Nashville, *amicus curiae* for Davidson County.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

The sole question in this case is whether under Section 9 of Ch. 113 of the Public Acts of 1955, T.C.A. sec. 6-318, counties are included within the phrase "any affected

instrumentality of the state of Tennessee''. The chancellor answered this question in the affirmative and hence this appeal by the City of Chattanooga.

Able and constructive briefs have been filed by all counsel and the same have been given careful consideration. We do not deem it necessary or advisable, however, to refer in detail to every proposition advanced in the respective briefs, but shall confine our discussion to what we deem necessary to express the conclusions we have reached.

Section 9 of said original act is appended hereto; also Section 1, Ch. 381, of the Acts of 1957, amending said Section 9.

This suit was filed under the declaratory judgment law of Tennessee by Hamilton County seeking a construction of Section 9, *supra*. The bill charges that pursuant to Ch. 113, Acts of 1955, the City of Chattanooga by ordinance effective January 8, 1957, has annexed that portion of Hamilton County known as Eastdale, which included the Eastdale Elementary School of Hamilton County, and by ordinance effective January 9, 1957, said City had annexed that portion of Hamilton County known as East Brainerd, which includes the Elbert Long School; that said County has spent a total of $539,117.34 in building and equipping these two schools for which judgment was sought against the City of Chattanooga; that Hamilton County had issued bonds in the amount of $81,668.66 in part payment for erecting and equipping the Eastdale School, which bonds are still outstanding and unpaid, and $109,145.09 in bonds outstanding and unpaid for the erecting and equipping of the Elbert Long School.

The bill prayed for a declaration of its rights under said statute and for a judgment against the City of Chattanooga for the total amount, *supra*, expended on said schools.

The City demurred on three grounds: (1) said bill fails to allege any state of facts upon which relief may be granted as against this defendant.

(2) Said bill shows on its face that this defendant, a municipality under the laws of Tennessee, legally annexed the territory in which the two schools set out in the bill are located and under the law, immediately upon the effective day of said annexation, title passed unconditionally to said municipality.

(3) Said bill shows on its face that none of complainants are "instrumentality of the State of Tennessee such as, but not limited to, a utility district, sanitary district, school district, or other public service district *ejusdem generis*, and, therefore, are not entitled to arbitration, award, payment or other relief under Section 9, Ch. 113, Public Acts of 1955."

The chancellor overruled the demurrer.

Prior to the present act under discussion it was held in *Prescott v. Town of Lennox*, 100 Tenn. 591, 47 S.W. 181, following a prior unreported decision, that valuable property acquired for school purposes became the property of the annexing city after said school district had been annexed. Questions of whether or not property held by a city in its private or proprietary capacity, could be acquired by another annexing municipality and the question of whether or not property held by the annexed

territory in its governmental capacity must be paid for by the annexing authority are all discussed in 37 Am. Jur., 658, sec. 41, and 62 C.J.S. Municipal Corporations sec. 77, p. 185, et seq. Some of the cases making a distinction between property already paid for by the County or other annexed territory as distinguished from improvements as to which there remains an existing indebtedness.

Prior to the 1953 amendment to Art. XI, Sec. 9 of the Tennessee Constitution, the extension of municipal boundaries in Tennessee has been accomplished largely by private act of the Legislature (Professor Wallace Mendelson, 8 Vanderbilt Law Review, 1, 3), and the Legislature had unrestrained power to change the territorial limits of municipal corporations either by public or private act without the consent of the municipality or the inhabitants thereof (*Town of Oneida v. Pearson Hardwood Flooring Co.*, 169 Tenn. 449, 88 S.W.2d 998). Municipalities had no power to initiate annexation proceedings and the same could only be initiated in accordance with Section 3320 of the 1932 Code, T.C.A. sec. 6-301, upon the petition of at least 50 freeholders, all of whom must have resided in the territory proposed to be annexed.

In 1954 appeared the article by Professor Mendelson in Vanderbilt Law Review, *supra,* entitled "Suggestions for the Improvement of Municipal Annexation Law". Then the 1955 Legislature enacted Ch. 113, now under discussion. The substance of the Act is stated in *Witt v. McCanless,* 200 Tenn. 360, 292 S.W.2d 392. This act makes a radical change in the methods by which municipalities may annex adjoining territory. It is very carefully drawn

and obviously the draftsman had the benefit of Professor
Mendelson's article, as much of the phraseology is iden-
tical; else this is the greatest coincidence since John
Adams and Thomas Jefferson died on the same day. For
example, Section 2(b) of the act is almost identical with
the fourth suggestion in the Appendix on page 18 of the
article with reference to *quo warranto* proceedings. The
same material is found in suggestion No. 2 of the Appen-
dix on page 50. Then section 9, following Sections 7 and
8 which latter two refer to the larger and smaller munici-
palities, contains first, the phrase "other stated instru-
mentalities", which necessarily means State instrumen-
talities other than existing municipalities. Then in the
body of Section 9 appears the phrase "affected instru-
mentality of the State of Tennessee". In the first pro-
posal of the Appendix, *supra,* on page 14, the phrase
does not appear but the description is spelled out in these
words "annexing municipality and any other town, city
or county" and in the next paragraph public service
districts are referred to. Nor is the phrase used in the
third proposal. However, in the second and fourth pro-
posals the phrase is used and is defined to "include any
town, city, county, utility, sanitary, school or other public
service district within the State of Tennessee." Pp. 16
and 18.

Now it seems to us that the draftsman of the act in
question has simply condensed his thoughts to include
every State instrumentality other than a municipality
by the expression "any affected instrumentality of the
State of Tennessee, such as, but not limited to, a utility
district, a sanitary district, school district, or other public
service district."

No reason suggests itself why the author of this act, after adopting the fundamental ideas expressed in Professor Mendelson's article, wherein counties were repeatedly referred to and included, would have intended to omit counties from this act. In fact, there is no reason for making a distinction between counties on the one hand and various sorts of public service districts suggested by the language of the act, compensating the latter but not the former.

Also, the language of the third sentence of Section 9 is rather broad in providing that the annexing municipality "shall have the exclusive right to perform or provide *municipal and utility functions and services in any territory which it annexes*," thus illustrating that the draftsman had in mind more and other than just utility functions.

The argument is made in behalf of the City of Chattanooga that Ch. 381, Acts of 1957, Section 1, is a clarification of the 1955 act and demonstrates that counties were not intended to be included. It strikes us that the expression "utility service" is here used in a very broad sense rather than in the limited sense as used in Section 9 of the original act. We think it means any public service being rendered by any State instrumentality, because there would be no reason to confine the benefits of this amendment to a utility district in the narrow sense and to deny it to a sanitary district, a school district or other public service district or any other State instrumentality rendering a public service.

We agree with the chancellor in rejecting the insistence on behalf of the City that the omission of the word

"County" indicates a clear legislative intent to limit arbitration and payment to instrumentalities of the same class as those specifically mentioned. He quoted from *Henderson County v. Wallace,* 173 Tenn. 184, 116 S.W.2d 1003, 1005, as follows:

"The county is but an arm or instrumentality of the state and as such agency is controlled by it. *Hill v. Roberts,* 142 Tenn. 215, 217 S.W. 826."

He said "most assuredly the County of Hamilton is definitely an affected instrumentality of the State of Tennessee and is rendering identically the same service as a school district in issuing bonds, constructing schools and levying taxes for the payment thereof."

We agree with the chancellor that the rule of construction known as *ejusdem generis* is not applicable to the present situation. He quoted the rule as stated in *Tiger Creek Bus Line v. Tiger Creek Transp. Ass'n,* 187 Tenn. 654, 216 S.W.2d 348, 351, as follows:

" 'The rule of interpretation indicated by these words is in substance that, where in a statute general words follow special words which limit the scope of such statute, these general words must be construed as applying to things of the same kind or class as those indicated by the preceding special words.' *State v. Wheeler,* 127 Tenn. 58, 61, 152 S.W. 1037, 1038."

He then stated "it will be noted that general words do not follow special words in Section 9 of this act but the general words precede the special words."

*Ejusdem generis* is, we think, not applicable for these further reasons. The care exercised in drafting the act is

illustrated first by Sec. 1, which defines a municipality to be any incorporated city or town, but *not to include* any "utility district, sanitary district, school district, or other public service district," whether organized under public or private act. The reasons for their express mention are obvious. The general rule is, and this Court has so stated, that such bodies are at least quasi-municipalities. Also some of the acts authorizing their creation expressly make them a municipality, such as T.C.A. sec. 6-2607 (Utility District Law of 1937) and T.C.A. sec. 6-2703 (Power District Law). Hence, it was necessary to exclude them from that definition for the purposes of the annexation aspect, but desirable and proper to include them for the purpose of equitable adjustment of rights and liabilities under Section 9. The express enumeration of them in Section 9 in the exact words of Section 1, following the generic term occurred no doubt *ex majori cautela*, i.e. out of greater caution, rather than for the purpose of limiting the scope of the prior general term. See *Selvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 91, 55 S.Ct. 50, 79 L.Ed. 211, 216.

It is further insisted on behalf of the City that if all State instrumentalities are to be included, there was no need for the draftsman to enumerate the different kinds of public service districts. We agree that it was not necessary to enumerate several kinds of public service districts; we think that it would have been just as effective to cover them all with the designation of public service districts, even though the draftsman thought otherwise. And so paraphrasing, the language could have been "any affected instrumentality of the State of Tennessee, such as, but not limited to public service districts". Under

either form of phrasing, however, we would still have the controlling words "but not limited to", which we think are the key words which under the other construction would be rendered meaningless.

The chancellor aptly observed that in view of this radical change in legislative policy whereby municipalities are granted this power to annex contiguous territory regardless of the wishes of the inhabitants of the latter, the omission of counties from the benefits of Section 9 would result in a no-man's-land in the purlieus of cities.

Wherefore all things considered in arriving at the legislative intent such as, but not limited to, the prior laws, the radical changes, the source of the provisions of the act, the careful language employed, the object to be accomplished, the power granted the dominant and the remedy afforded the servient body, the use of terminology presumed to have been understood, we are constrained to affirm the decree of the chancellor.

Remand for further proceedings. Costs against appellant.

## Appendix

"Section 9. *Effect on other state instrumentalities. Be it further enacted,* That upon adoption of an annexation Ordinance or upon referendum approval of an annexation resolution as hereinabove provided, an annexing municipality and any affected instrumentality of the State of Tennessee, such as, but not limited to, a utility district, sanitary district, school district, or other public service district, shall attempt to reach agreement in writ-

ing for allocation and conveyance to the annexing municipality or any or all public functions, rights, duties, property, assets and liabilities of such State instrumentality that justice and reason may require in the circumstances. Provided, however, that any and all agreements heretofore entered into relating to annexation shall be preserved. The annexing municipality, if and to the extent that it' may choose, shall have the exclusive right to perform or provide municipal and utility functions and services in any territory which it annexes, notwithstanding Section 3695.28 of the 1950 Supplement to the Code of Tennessee or any other statute. Subject to such exclusive right any such matters upon which the respective parties are not in agreement in writing within 60 days after the operative date of such annexation shall be settled by arbitration with the laws of arbitration of the State of Tennessee effective at the time of submission to the arbitrators and Sub-Section (2) of Code Section 9359 of the Code of Tennessee 1932 shall not apply to any arbitration arising under this Act. The award so rendered shall be transmitted to the Chancery Court of the County in which annexing municipality is situated and thereupon shall be subject to review in accordance with Sections 9376 to 9379 inclusive, of the Code of Tennessee 1932." Sec. 9, Ch. 113, Acts of 1955.

"Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That Section 6-318 of the Tennessee Code Annotated be amended by adding the following paragraph at the end thereof:

" 'If the annexed territory is then being provided with a utility service by a state instrumentality which has outstanding bonds or other obligations payable from the

revenues derived from the sale of such utility service, the agreement or arbitration award referred to above shall also provide (a) that the municipality will operate the utility property in such territory and account for the revenues therefrom in such manner as not to impair the obligations of contract with reference to such bonds or other obligations, or (b) that the municipality will assume the operation of the entire utility system of such state instrumentality and the payment of such bonds or other obligations in accordance with their terms. Such agreement or arbitration award shall fully preserve and protect the contract rights vested in the holders of such outstanding bonds or other obligations.' '' Sec. 1, Ch. 381, Acts of 1957.

Note: The above sections now appear as T.C.A. sec. 6-318.