**CITY OF LENOIR CITY and Lenoir City Utilities, Appellants,**

v.

**STATE of Tennessee ex rel. the CITY OF LOUDON, Appellee.**

Supreme Court of Tennessee.

Oct. 2, 1978.

Alfred Lee Hathcock, Jr., Terry G. Vann, Lenoir City, for appellants.

Arthur M. Fowler, Fowler & Gibson, Loudon, for appellee.

OPINION

BROCK, Justice.

This is a mandamus action by the City of Loudon to require the City of Lenoir City and Lenoir City Utilities Board to submit to arbitration as required by T.C.A., § 6–318,[1] for the purpose of reaching an agreement for the transfer of utility functions and facilities to Loudon.

In 1977, the City of Loudon, by Ordinance No. 569, annexed a territory that is presently provided with electricity by Lenoir City Utilities. The annexed area includes the Union Carbide Corporation, an industrial park of approximately 280 acres and a road leading to the industrial park. After annexation, Loudon, pursuant to T.C.A., § 6–318, notified Lenoir City and its Utilities Board that it desired to purchase all utility functions and facilities in the area. Lenoir City rejected the offer to negotiate the transfer, contending that municipalities are not "affected instrumentalities" under T.C.A., § 6–318, and, therefore, that it does not have to comply with the provisions of that statute.

The City of Loudon filed a petition for mandamus in the Circuit Court of Loudon County to require Lenoir City to submit the issues to arbitration as required by the statute. The case was submitted to the trial court on a stipulation of fact. The trial court found that the City of Loudon had the exclusive right to provide utility services in the newly annexed territory. An alternative writ of mandamus was issued but a discretionary appeal under T.C.A., § 27–305, was granted on the following question, certified by the trial court: Whether a municipality is "any affected instrumentality of the state" within the meaning of T.C.A., § 6–318.

In support of its contention that a municipality is not an affected instrumentality of the state, Lenoir City relies on the case of *Hamilton County v. City of Chattanooga,* 203 Tenn. 85, 310 S.W.2d 153 (1958), wherein it is stated concerning T.C.A., § 6–318:

1. This statute is set out in the Appendix to this opinion.

". . . Now it seems to us that the draftsman of the act in question has simply condensed his thoughts to include every State instrumentality *other than a municipality* by the expression 'any affected instrumentality of the State of Tennessee, . . .'" (Emphasis supplied.) 310 S.W.2d at 155.

■ It is our opinion that this language is not controlling of the issue presented. The question in the *Hamilton County* case was whether counties are "affected instrumentalities" under T.C.A., § 6–318. The holding of this Court was that counties are such instrumentalities. The reference to municipalities, however, was a dictum and has no authoritative value here.

T.C.A., § 6–318, provides in part:

". . . an annexing municipality and *any affected instrumentality of the state of Tennessee, such as, but not limited to,* a utility district, . . . or other public service district, shall attempt to reach agreement in writing for allocation and conveyance to the annexing municipality of any or all public functions, . . ." (Emphasis added.)

The words of a statute must be given their natural and ordinary meaning. *Hall Contracting Corp. v. Tidwell*, Tenn., 507 S.W.2d 697 (1974); *Partee v. Memphis Concrete Pipe Co.*, 155 Tenn. 441, 295 S.W. 68 (1927). The draftsman of the statute in question lists some state instrumentalities in order to give the general focus of the legislation. The inclusion of the phrase "but not limited to" indicates that the statutory listing is not exclusive. Clearly the statute encompasses state instrumentalities other than those listed.

■ It is the duty of this Court to give effect to the Legislature's reasonable intent. *Franklin Power & Light Co. v. Middle Tennessee Electric Membership Corp.*, 222 Tenn. 182, 434 S.W.2d 829 (1968). The meaning of the statute is determined by viewing the statute as a whole and in light of its general purpose. The general purpose of T.C.A., § 6–318, is to provide an outline of the procedure for transferring utility functions to an annexing municipality. When read in its entirety, it becomes clear that the Legislature means municipalities and any other instrumentality by the expression "any affected instrumentality of the state . . ." For example, T.C.A., § 6–318, provides that an annexing municipality shall have the exclusive right to provide utility functions and services to any territory which it annexes. To hold that municipalities are exempt from T.C.A., § 6–318, would defeat the clear intent of the Legislature to vest in the annexing municipality the authority to determine how utility services will be provided within its boundaries. *Franklin Power & Light Co. v. Middle Tennessee Electric Membership Corp., supra.* Our duty is to give effect to, not to modify the Legislature's intent. We, therefore, hold that a municipality is an affected instrumentality of the State within the meaning of T.C.A., § 6–318.

■ The City of Loudon could allow Lenoir City to continue servicing the area by granting it a franchise, but it has elected to provide the service itself. Loudon acquired the exclusive right to make this election upon annexing the territory; Lenoir City has no authority to refuse to arbitrate as required by T.C.A., § 6–318.

For the reasons stated herein, the judgment of the trial court is affirmed and the case remanded for further proceedings consistent with this Opinion.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.

## APPENDIX

"6–318. *Municipal property and services.* —Upon adoption of an annexation ordinance or upon referendum approval of an annexation resolution as hereinabove provided, an annexing municipality and any affected instrumentality of the state of Tennessee, such as, but not limited to, a utility district, sanitary district, school district, or other public service district, shall attempt to reach agreement in writing for

allocation and conveyance to the annexing municipality of any or all public functions, rights, duties, property, assets and liabilities of such state instrumentality that justice and reason may require in the circumstances. Provided, however, that any and all agreements entered into before March 8, 1955 relating to annexation shall be preserved. The annexing municipality, if and to the extent that it may choose, shall have the exclusive right to perform or provide municipal and utility functions and services in any territory which it annexes, notwithstanding § 6–2607 or any other statute, subject, however, to the provisions of this section with respect to electric cooperatives. Subject to such exclusive right, any such matters upon which the respective parties are not in agreement in writing within sixty (60) days after the operative date of such annexation shall be settled by arbitration with the laws of arbitration of the state of Tennessee effective at the time of submission to the arbitrators, and subsection (2) of § 23–501 shall not apply to any arbitration arising under §§ 6–308—6–320. The award so rendered shall be transmitted to the chancery court of the county in which the annexing municipality is situated, and thereupon shall be subject to review in accordance with §§ 23–513—23–515 and 23–518.

"If the annexed territory is then being provided with a utility service by a state instrumentality which has outstanding bonds or other obligations payable from the revenues derived from the sale of such utility service, the agreement or arbitration award referred to above shall also provide (a) that the municipality will operate the utility property in such territory and account for the revenues therefrom in such manner as not to impair the obligations of contract with reference to such bonds or other obligations, or (b) that the municipality will assume the operation of the entire utility system of such state instrumentality and the payment of such bonds or other obligations in accordance with their terms. Such agreement or arbitration award shall fully preserve and protect the contract rights vested in the holders of such outstanding bonds or other obligations."