**Nicole RICHARDSON, b/n/f Hobert RICHARDSON, Natural father of Nicole Richardson, Plaintiff/Appellant,**

**v.**

**The FENTRESS COUNTY SCHOOL BOARD, A subdivision of the Fentress County Government; Shelby Turner, Chairperson, Herbert Hull, Ruby Shelton, Mary Padgett and Hoyt Stephens, Individual members; and Martha Wiley, Superintendent of the Fentress County Schools, Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 29, 1992.

Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

Phillip M. Smalling, Byrdstown, for plaintiff/appellant.

Thomas C. Coleman, Jr., Jamestown, for defendants/appellees.

## OPINION

KOCH, Judge.

This appeal concerns the denial of a perfect attendance award to a seventh grader at the Pine Haven Elementary School in Fentress County. The student and her father filed a declaratory judgment suit in the Chancery Court for Fentress County alleging that she had been denied the award because of a change in the perfect attendance awards program that was contrary to Tenn.Code Ann. §§ 49–2–203 and 49–6–3002 (1990). The trial court, sitting without a jury, held that the statutes did not apply to the program, that the change in the program did not require action by the school board, and that the student was not treated unfairly. We affirm.

### I.

Nicole Richardson was a student at the Pine Haven Elementary School in Fentress County. She received perfect attendance awards every year from the first through the sixth grade under an informal program administered by the principal of the school. Although there is some disagreement between the parties, the awards program used the attendance criteria in the Tennessee Education Finance Act of 1977 [Tenn. Code Ann. §§ 49–3–301 through 49–3–323 (1990 & Supp.1991) ].[1] The record is unclear concerning when or how the school's perfect attendance awards program was created except for a notice about the program that appeared in a local newspaper in 1985.

The principals in the Fentress County school system decided to change the perfect attendance awards program for the 1987–1988 school year when Miss Richard-

son was in the seventh grade. Under the new criteria, a student was considered present if he or she was at school for at least three hours and sixteen minutes of the class day. The record is again unclear concerning how the principals notified the students and their parents of the change in the criteria, and the parties disagree concerning whether Miss Richardson's family was informed of the change.[2] The Fentress County School Board later ratified the principals' decision during the 1988–1989 school year.

The decision to deny Miss Richardson a perfect attendance award for her seventh grade year was based on three separate instances in which she left school early. Mr. Richardson took his daughter out of school at 12:00 p.m. for a doctor's appointment on November 24, 1987. He took her out of school at 10:00 a.m. on the following day for the same reason. Accordingly, the school gave Miss Richardson one absence for November. Mr. Richardson took his daughter out of school again on February 9, 1988, so that she could testify in a custody hearing regarding his other child. Since Miss Richardson was present for less than three hours and sixteen minutes that day, the school gave her another absence for that grading period. The school considered both absences excused and allowed her to make up her academic work.

Mr. Richardson and his daughter appealed the absences to the local superintendent and to the Fentress County School Board, but to no avail. They then filed this suit, alleging that the perfect attendance awards program had not been adopted in accordance with Tenn.Code Ann. §§ 49–2–203 and 49–6–3002. The trial court dismissed the complaint after finding that the statutes did not apply to the awards pro-

---

1. Miss Richardson's father testified that the policy only required attendance for a portion of each day in order for a student to be considered present. This misconception is understandable because under the attendance criteria in the Tennessee Education Finance Act of 1977, a student could miss five of six class periods and still not receive an absence. However, the criteria also provided that a student who missed six

or more hours in one twenty-day reporting period, like Miss Richardson did in November 1987, would receive an absence even though the student might have been present for some portion of every day.

2. Miss Richardson has not pursued the issue of notice, and therefore, we need not address it.

gram and that Miss Richardson had been treated fairly since she would have received an absence under either the old or the new criteria.

## II.

■ The pivotal issue in this case is whether Tenn.Code Ann. §§ 49–2–203 and 49–6–3002 govern Fentress County's adoption and administration of its perfect attendance awards program. Thus, we must determine whether the General Assembly intended that these statutes would apply to programs such as the one at issue in this case.

Our role in construing statutes is to give effect to the General Assembly's intentions. *Westinghouse Elec. Corp. v. King,* 678 S.W.2d 19, 23 (Tenn.1984), *cert. denied,* 470 U.S. 1075, 105 S.Ct. 1830, 85 L.Ed.2d 131 (1985); *Brooks v. Fisher,* 705 S.W.2d 135, 137 (Tenn.Ct.App.1985). We must consider statutes as a whole in light of their general purpose, *City of Lenoir City v. State ex rel. City of Loudon,* 571 S.W.2d 297, 299 (Tenn.1978), and we must take care not to unduly restrict their coverage or to extend them beyond where the General Assembly intended them to stop. *See United States v. Bacto–Unidisk,* 394 U.S. 784, 800–01, 89 S.Ct. 1410, 1419, 22 L.Ed.2d 726 (1969).

When the General Assembly has specifically addressed the precise issue at hand, we need only look to the words of the statute itself to determine the legislature's intent. *Neff v. Cherokee Ins. Co.,* 704 S.W.2d 1, 3 (Tenn.1986); *Montgomery v. Hoskins,* 222 Tenn. 45, 47, 432 S.W.2d 654, 655 (1968). When a statute is ambiguous, however, we must rely on the various rules of statutory construction to ascertain its intended scope.

Tenn.Code Ann. § 49–2–203(13) provides that local school boards have a duty to

Adopt and enforce, in accordance with guidelines prescribed by the state board of education pursuant to § 49–6–3002, minimum standards and policies governing student attendance, subject to the availability of funds;

Tenn.Code Ann. § 49–6–3002, in turn, provides:

The state board of education shall promulgate rules ... which prescribe guidelines for use by local boards of education in establishing standards and policies governing student attendance, subject to availability of funds. Such guidelines shall include, but not be limited to, the following stipulations:

(1) Attendance policies shall be firm but fair so that each student has a reasonable opportunity to meet the minimum requirements;

(2) Effective accounting and reporting procedures shall be developed to keep parents or guardians informed of a student's absence from class;

(3) Policies shall accommodate extenuating circumstances created by emergencies over which the student has no control;

(4) Appeal procedures shall be included to assure the student's right of due process;

(5) Alternative programs shall be established to provide educational options for any student who severely fails to meet minimum attendance requirements.

(b) Notwithstanding the provisions of any law to the contrary, if a student is unable to attend regular classes because of illness, injury, or pregnancy and if the student has participated in a program of hospital or homebound instruction administered or approved by the local education agency, then the student shall not be penalized for grading purposes nor be denied course completion, grade level advancement, or graduation solely on the basis of the student's absence from the regular classroom during the period of such hospital or homebound instruction.

The statutes themselves give no indication that the General Assembly contemplated that they would apply to perfect attend-

ance awards programs. Tenn.Code Ann. § 49–6–3002 focuses on minimum attendance standards and the academic effect of these standards. Tenn.Code Ann. § 49–6–3002(a)(1) provides students with a "reasonable opportunity to meet the minimum requirements." Tenn.Code Ann. § 49–6–3002(a)(5) applies only to students "who severely [fail] to meet minimum attendance requirements." Tenn.Code Ann. § 49–6–3002(b) provides protection for students with certain health related absences but only in four specific academic areas.

Neither Tenn.Code Ann. § 49–2–203 nor Tenn.Code Ann. § 49–6–3002 defines the term "student attendance," and neither statute refers directly or indirectly to perfect attendance awards programs. Accordingly, it is appropriate to consult their legislative history to gain additional insight into the General Assembly's intentions. *Universal Computing Co. v. Olsen,* 677 S.W.2d 445, 447 (Tenn.1984); *Chapman v. Sullivan County,* 608 S.W.2d 580, 582 (Tenn.1980).

The debates surrounding the enactment of Tenn.Code Ann. § 49–6–3002[3] indicate that the General Assembly was not contemplating perfect attendance awards programs when it enacted the statute. Instead, it was focusing on minimum attendance standards, uniform truancy rules, and the academic effect of these standards and rules on public school students. Rather than being concerned about recognition and rewards for good attendance, the bill's senate sponsor explained that its purpose was to adopt uniform minimum attendance standards to prevent students from being "kicked out" and to "save them from the street."

Based on the legislative history, we concur with the trial court's conclusion that neither Tenn.Code Ann. § 49–2–203 nor Tenn.Code Ann. § 49–6–3002 were intended to apply to local school systems' perfect attendance award programs. State law does not require local school boards to adopt perfect attendance policies. Accordingly, their adoption and administration are within the discretion of each local school board.

### III.

Mr. Richardson and his daughter also assert that Fentress County's perfect attendance awards program was arbitrary because it was implemented without first being approved by the county school board. We find this argument to be without merit. State law does not require perfect attendance awards programs and certainly does not require that they be adopted by the local school board before they become effective. Since Mr. Richardson can point to no other basis for requiring the school board to approve such programs, we will not on our own accord impose this requirement on local school systems.

Public officials are presumed to perform their duties in a fair and reasonable manner. *Mitchell v. Garrett,* 510 S.W.2d 894, 898 (Tenn.1974). We find no evidence in this record to rebut this presumption with regard to the conduct of the school officials in Fentress County. In fact, we find just the opposite. Miss Richardson would have been absent from school for at least one day during the 1987–1988 school year under either the old or the new criteria. Accordingly, the school officials did not act arbitrarily or capriciously when they declined to award her a perfect attendance award for the 1987–1988 school year.

### IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs to Hobert Richardson and his surety for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.

---

**3.** Tenn.Code Ann. § 49–6–3002 is the codification of Act of April 25, 1983, ch. 243, 1983 Tenn.Pub.Acts 422.