# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT KNOXVILLE

FILED

**May 7, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

JACQUELINE S. WHITESIDE,  )
                               )       Hamilton Circuit No. 93-DR-2557

      Petitioner/Appellant,     )

                               )       Appeal No. 03A01-9707-CV-00272

v.                             )

                               )

JERRY WHITESIDE,          )

                               )

      Respondent/Appellee.    )

APPEAL FROM THE CIRCUIT COURT OF HAMILTON COUNTY
AT CHATTANOOGA, TENNESSEE
THE HONORABLE SAMUEL H. PAYNE, JUDGE

**John P. Konvalinka, Esq.**
Grant, Konvalinka & Harrison
Chattanooga, Tennessee
Attorney for Appellant


**Edward A. Love, Esq.**
Chattanooga, Tennessee
Attorney for Appellee

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*

**WILLIAM H. WILLIAMS, Senior Judge**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**
**DAVID R. FARMER, J.**

**O P I N I O N**

This appeal is from the action by the trial court on a contempt citation by the Appellant, hereinafter "Wife," and a Petition to Modify the original Divorce Decree and a motion under Rule 60, Tenn. R. Civ. P., brought by the Appellee, hereinafter "Husband."

The trial court found that the Wife was living with a third person pursuant to T.C.A. § 36-5-101(a)(3) and reduced alimony from $1,000.00 to $250.00 per month; relieved Husband of the obligation to pay life insurance premiums past and future; declared no alimony arrearage due Wife; and required Husband to reimburse Wife for marital debts in the amount of $10,006.85 payable at $500.00 per month without interest. The appeal is properly before this Court.

The Final Decree of Divorce entered December 1, 1993 recited that the Husband did not contest the divorce by Answer or otherwise respond to the Complaint and did not appear at the divorce hearing.[1]

At the time of the divorce hearing, the Court heard testimony of the Wife and her corroborating witnesses and entered a Decree, the portions pertinent to the issues raised on this appeal are: (1) the divorce was granted to the Wife on grounds of inappropriate marital conduct; (2) the marital residence was awarded to Wife with Wife being solely responsible for payment of the mortgage on the property beginning January 1, 1994; (3) Husband was ordered to pay the premium on a life insurance policy on his life in the principal amount of $100,000.00 with the Wife named as sole beneficiary and the ownership of the policy was transferred to the Wife; (4) Husband was ordered to pay as alimony certain debts incurred through the use of certain credit cards by the parties during the marriage; (5) Wife was awarded alimony payable for life at $1,000.00 per month on the first and fifteenth of each month.

On January 16, 1997, the Wife filed a Petition for Contempt of Court seeking a judgment for past due alimony, reimbursement for life insurance premiums paid by the Wife, and reimbursement to the Wife of payments made by her of certain credit card debts that had been ordered by the Court in the original Decree to be paid by the Husband in the amount of $10,006.85.

On January 22, 1997, the Husband filed a Rule 60, Tenn. R. Civ. P., Petition to Modify and a motion seeking the immediate elimination of alimony payments to the Wife. The Husband also

---

[1]He did subsequently appear at the default judgment proceeding and consented to the Decree.

asked for credit for all alimony payments made to the Wife after the date that a male companion allegedly began living with her. The Husband, by the Rule 60, Tenn. R. Civ. P., motion moved the Court to alter or amend the Final Divorce Decree to conform to the parties' post-divorce decree agreements, relieving the Husband from reimbursing Wife for her voluntary payments of the life insurance premiums and for her voluntary payment of the credit card debts previously ordered by the Court that Husband pay in the amount of $10,006.85.

The evidence presented at the hearing on May 5, 1997 produced an unusual, if not bizarre, scenario. Apparently from the outset, the parties proceeded to ignore the Divorce Decree by the Court. They continued to reside together at the marital residence until the Wife moved out in March, 1994. The Husband stayed in the house and paid the Wife rent until the house was sold by the Wife on November 4, 1994. During this time, the Husband paid the entire amount of his paycheck into the Wife's checking account and after she paid all bills and obligations of the two, they split the remainder. The Wife testified that she netted $39,342.56 from the sale of the residence. While not disclosing this amount to her Husband, she gave him $5,000.00 and paid the debts of the Husband that the Court had ordered him to pay in the amount of $10,006.85. In addition, the Wife paid the monthly life insurance premiums the Husband had been ordered to pay. The Wife stated at the hearing that her actions were done in order to protect her interests on the mortgage securing the marital home and to protect her credit rating so that she could purchase the house where she is now residing at 7938 Hamilton Mill Drive in Chattanooga. After the house was sold, the Husband paid the monthly alimony of $1,000.00 under an arrangement whereby he paid $750.00 directly to the Wife and their daughter paid $250.00 to her mother on behalf of the Husband. This was done because there was an automatic $250.00 deduction from Husband's paycheck to pay the daughter's note on her car.

On December 1, 1996, Husband stopped the $750.00 payment of alimony because he discovered that the Wife was allegedly living with a man named Norwood. The daughter continued to pay the $250.00 alimony to the Wife on behalf of the Husband. The Wife testified her gross income for 1996 was $27,299.48. The Husband testified that his income was approximately $72,000.00 annually. The Wife stated that she purchased the house on Hamilton Mill Drive in October of 1995. The mortgage on the second purchase is $109,000.00. She denied that Thomas Norwood was living with her at the address of 7938 Hamilton Mill Drive. She conceded, however,

that Norwood received his monthly bank statement at her address, they have had a very close relationship for the last one and one-half years, Norwood did spend the night occasionally, he eats dinner there virtually all the time, he does not pay rent or utilities, and he keeps clothes at her house sometimes.

The Husband verified by his testimony the post-divorce arrangements between Wife and himself. This arrangement lasted apparently until the marital home was sold by the Wife. The record is not clear as to when precisely the practice of depositing Husband's paycheck into Wife's bank account stopped. Husband testified that the insurance premium for the life insurance on his life was voluntarily paid by the Wife by agreement between the two. The purpose of the policy was to secure the mortgage on the marital residence. The monthly premiums of $100.00 were automatically deducted from Wife's bank account and she agreed to continue making that payment. Husband said that he already had $300,000.00 of permanent life insurance on his life in addition to the subject policy. He insisted that they agreed that he would pay only the alimony and certain credit card debts other than the debts amounting to $10,006.85 that the Wife admits she voluntarily paid. Neither party maintained that the other was coerced into any of the agreements.

When asked why he stopped the alimony payments after the November 15, 1996 payment, the Husband replied, "I just felt that it was not fair for me to pay money to her when someone else was living in the house." He testified that he had called Wife's house on several occasions and a man answered each time, that he had driven by Wife's house on Hamilton Mill Drive at various times in the mornings and afternoons on 15 or 20 occasions and he had seen Norwood's car parked there. Norwood drove a red or burgundy Lincoln Continental. He had seen Norwood leave her house three or four times at around mid-morning.

Kimberly Whiteside Brooks, daughter of the parties, testified that she saw nothing in her mother's house to indicate that anyone was living there other than her mother.      Nettie Houston, mother of the Wife, testified that nobody was living with her daughter.

Gwendolyn Norwood, mother of Tom Norwood, testified that her son lived with her and his sisters at 3111 Curtis Street in Chattanooga.

Thomas C. Norwood testified that he did not live with Ms. Whiteside although he had spent the night there. He is retired from the United States Navy and receives a pension for 21 years of service as a Naval officer. He is presently employed as a furniture salesman in Chattanooga. He

4

receives a pension check of $1,850.00 a month and earns about $2,700.00 a month from his private employment. He lives with his mother at 3111 Curtis Street. Mr. Norwood testified on cross-examination that he owns a burgundy Lincoln Continental and a car loan document dated 1996 shows his address at Ms. Whiteside's home on Hamilton Mill Drive. His car insurance papers give the same address. His application for employment at Linda's Furniture Store gave Ms. Whiteside's address as his present address and her phone number as his number. An Employment Eligibility Verification form for tax purposes gave the address of Ms. Whiteside at 7938 Hamilton Mill Drive. Norwood's W-4 withholding allowance form gave the same address. The original car registration in 1995 on the Lincoln Continental showed Norwood's address at 3111 Curtis Street, but on October 31, 1996, the address was changed by Norwood to show 7938 Hamilton Mill Drive. A deposition from Mr. Tim Butler, assistant manager of First Enterprise Acceptance Corporation, verified the address furnished them by Norwood on his insurance verification form dated September 17, 1996 to be the address of Ms. Whiteside on Hamilton Mill Drive.

At the conclusion of the hearing, the trial court rendered an oral findings of fact later incorporated by reference into the written opinion entered June 2, 1997.

The trial court's oral findings included the following:

> . . . The Court finds that the insurance obligation ended when the house was sold. By her agreement and his too, that was to cover the house. When it was sold, it was over. Now, if she wants to keep it, I think she has a right to do that, but she has to pay for it.
>
> The Court does find that she has been living with another man, Mr. Norwood. He makes approximately $4,500.00 a month. I don't believe the fact, for the record, that he doesn't contribute anything. If you take her total salary and divide it monthly, it's $2,274.00. If you take 20 percent for taxes, if you paid her house payment of $1,022.00, that leaves her $797.00, and her total utilities run $604.00. She couldn't possibly live. There is no way she could make it. She had to get the money somewhere, the Court feels like that, and I think it's, for the record, it's a rouse [sic] (ruse) so that he has to keep paying alimony. If she loves him, she ought to marry him, as he says he wants to.
>
> The Court feels like alimony should be reduced to $250.00 a month. I feel like he does owe the $10,006.85 she paid off on her accord for her own purposes, not yours. The Court feels like he should pay $500.00 a month to her back for paying that off at no interest. When that is paid off, he is through with that, and he should pay the other bills.
>
> The Court costs should be divided and each side pay their own attorney.

5

Yes, sir, I don't feel -- I feel like it's been a charade on the man, for the record. I think he's been taken advantage of. He obviously went down and changed it. He makes $4,500.00 a month. She couldn't live on what she got. It's just the evidence is overwhelming that somebody is helping her, and the only one before this Court would be Mr. Norwood, and that's what I find, and I'll make it pretty clear for the Court of Appeals.

The pertinent portions of the written opinion filed June 2, 1997 are as follows:

This cause came on to be heard on the 5th day of May, 1997, upon Petitioner's Jacqueline Whiteside Petition for Contempt, the Respondent's Jerry Whiteside Petition for Modification, as well as the Rule 60 Motion to Alter or Amend the Judgment, and after hearing all the proof in the cause, along with the examination of all the exhibits, the Court made certain findings of fact and conclusions of law with a copy of the Court's memorandum opinion given from the bench attached to this Order and incorporated herein,

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:

1. That Jerry Whiteside's obligation to pay the life insurance premium expired when the parties' marital home was sold in November, 1994. Jerry Whiteside owes no money on that issue and the Petition is denied as to that issue.

2. The Court finds that Jacqueline Whiteside is living with a third person, Thomas Norwood, and that the Petition to Modify is granted and the permanent alimony payments are reduced from $1,000.00 to $250.00 per month.

3. The Court finds there is no alimony arrearage due Jacqueline Whiteside and that Jerry Whiteside is not guilty of contempt of court.

4. The Court finds that Jacqueline Whiteside paid $10,006.85 toward debts that Jerry Whiteside was ordered to pay in the Final Divorce Decree and that Jerry Whiteside's Petition to have those debts declared Jacqueline Whiteside's obligation is hereby denied. Jerry Whiteside is hereby ordered to reimburse Jacqueline Whiteside the sum of $10,006.85 payable at the rate of $500.00 per month until paid off with the debt bearing no interest, for which execution may issue if necessary.

5. All of the remainder of the contempt petition is denied.

6. All of the remainder of Jerry Whiteside's Petition to Modify and Rule 60 motion is denied.

7. Each party is to pay their own attorney fees.

8. That each party will pay one-half of the court costs of this case, for which execution may issue if necessary.

Entered this 2nd day of June, 1997.

/s/ Samuel H. Payne, Judge

## THE ISSUES

The Appellant/Wife presented the following issues:

I.   *Whether the Court abused its discretion in modifying the Final Decree to reduce the award of permanent alimony.*

II.  *Whether the Court erred in vacating the alimony and life insurance premium arrearages of Mr. Whiteside.*

III. *Whether the Court erred in terminating Mr. Whiteside's liability for future life insurance premium payments.*

IV.  *Whether the Court erred in failing to grant Ms. Whiteside post-judgment interest.*

The Appellee/Husband presented the following issues:

I.   *The Court erred in not permanently terminating all permanent alimony.*

II.  *The Court erred in ordering Husband to reimburse Wife $10,006.85 in debts Wife voluntarily paid.*

## THE DECISION

Since this case was tried by the Court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. T.R.A.P. 13(d).

The pertinent portions of T.C.A. § 36-5-101-- Decree for Support of Spouse and Children -- Modification -- Delinquencies are as follows:

> (a)(1)  Whether the marriage is dissolved absolutely, or a perpetual or temporary separation is decreed, the court may make an order and decree for the suitable support and maintenance of either spouse by the other spouse, or out of either spouse's property, and of the children, or any of them, by either spouse or out of such spouse's property, according to the nature of the case and the circumstances of the parties, the order or decree to remain in the court's control; and, on application of either party for spousal support, the court may decree an increase or decrease of such allowance only upon a showing of a substantial and material change of circumstances. . . .
>
> (2)(A) Courts having jurisdiction of the subject matter and of the parties are hereby expressly authorized to provide for the future support of a spouse and of the children, in proper cases, by fixing some definite amount or amounts to be paid in monthly, semimonthly, or weekly installments, or otherwise, as circumstances may warrant, and such awards, if not paid, may be enforced by any appropriate process of the

7

court having jurisdiction thereof, including levy of execution.

* * * *

(3) In all cases where the person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is thereby raised that:

(A) The third person is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the court therefore should suspend all or part of the alimony obligation of the former spouse; or

(B) The third person is receiving support from the alimony recipient and the alimony recipient therefore does not need the amount of alimony previously awarded and the court therefore should suspend all or part of the alimony obligation of the former spouse.

This subdivision (a)(3) shall in no way be construed to create any common-law marriage obligation as to third parties.

The intent of statute (a)(3), *Id.*, is clear and unambiguous when read in the natural and ordinary meaning of the language and in the context of the entire statute without any forced or subtle construction to limit the import of the language. *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977); *City of Lenoir v. State, ex rel. City of Loudon*, 571 S.W.2d 297, 299 (Tenn. 1978); *see Azbill v. Azbill*, 661 S.W.2d 682, 686 (Tenn. Ct. App. 1983).

In *Azbill*, this Court elucidated the intent of the 1980 enactment pertaining to an alimony recipient living with a third person as follows:

It is clear that the Legislature merely provided a different method of proof for the situation where the changed circumstance consisted of the alimony recipient living with a third person. In those instances the presumption arises that the alimony previously decreed is not needed and therefore the burden shifts to the alimony recipient to demonstrate that although he or she is residing with a third person, this in no way alleviates the need for the alimony previously awarded. The synonym for live is reside and it is clear that the use made of the word "lives" in the statute could just as easily have been "resides." Nowhere does it indicate that there must be any type of liaison, sexual or otherwise.

*Azbill*, 661 S.W.2d at 686.

As noted, this amendment simply furnished a different substantial and material change of circumstance that would warrant the Court in its discretion to modify the final judgment authorized by T.C.A. § 36-5-101(a)(1).

8

A Motion for Relief of Judgment under Rule 60.02, Tenn. R. Civ. P., addresses the sound discretion of the trial judge; the scope of review on appeal is whether the trial judge abused his discretion. *Tony v. Muller Co.*, 810 S.W.2d 145 (Tenn. 1991); *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94 (Tenn. 1993); *Ellison v. Alley*, 902 S.W.2d 415 (Tenn. Ct. App. 1995).

After a thorough and careful review of the record, we cannot say that the trial court abused its discretion in finding that the Wife, Jacqueline Whiteside, was living with a third person, Thomas Norwood, within the intendment of T.C.A. § 36-5-101(a)(3). We agree that the evidence preponderates overwhelmingly in favor of the Court's factual finding in this regard. Jacqueline Whiteside, Thomas Norwood, and their three supporting witnesses stoutly denied that Norwood was residing at the Wife's residence, but the evidence in the record thoroughly impeached their testimony.

> The trial court observed the manner and demeanor of the witnesses and is in a better position to determine the credibility of those who appeared personally before the court. Any conflict in testimony requiring a determination of the credibility of witnesses is for the trial court and is binding on the appellate court, unless other real evidence compels a contrary conclusion (citing authorities).

*Azbill v. Azbill*, 661 S.W.2d at 687.

There is no evidence in the record that compels a contrary conclusion. We affirm the trial court. This finding raises the rebuttable presumption that Norwood is contributing to the support of Ms. Whiteside and she therefore does not need the amount of support previously awarded in the final judgment of divorce.

The ruling by the trial court established two substantive facts material to the Court's decision to reduce the alimony *in futuro* from $1,000.00 to $250.00 per month under T.C.A. § 36-5-101(a)(3). First, a third person (Norwood) was living with the alimony recipient (Wife). Second, the third person is contributing to the support of the alimony recipient. The latter finding resolved the issue of "need" by the Wife who, in response to the presumption raised by the Court's finding that Norwood was living with her, presented evidence denying that he contributed to her support and that her living expenses far exceeded her financial ability to pay. The trial court stated unequivocally that it did not believe Norwood was not contributing to the Wife's support and, as such, suspended the alimony payment from $1,000.00 to $250.00. The statute vests the trial court with the authority to

9

take such action and it did so in its discretion. If the alimony recipient fails to overcome the presumption, as here, T.C.A. § 36-5-101(a)(3)(A) states: ". . . and the court therefore should suspend all or part of the alimony obligation of the former spouse." (emphasis added). The word "should" is the past tense of "shall." Webster's New Universal Unabridged Dictionary, 2nd ed. We find that the evidence does not preponderate against the Court's findings. There was no abuse of discretion by the Court, and the Court correctly followed the law. We affirm.

Wife next contends that the Court erred in vacating the alimony and life insurance premium arrearages of the Husband.

In the trial court's oral findings of fact at the conclusion of the hearing on May 5, 1997, incorporated by reference into the written final order of June 7, 1997, the Court granted full credit to the Husband for any alimony payments due to Wife from the time that the proof in the record showed the Wife and Norwood to be living together until the date of the filing of the Petition to Modify by the Husband. Wife contends that Husband owes her $1,125.00 based upon the arrearage for the month of December, 1996 and until January 16, 1997, the date she filed the Petition for Contempt. The Husband filed the Petition to Modify on January 22, 1997. Therefore, the arrearage would run for the month of December, 1996 until January 22, 1997. We find the total arrearage for that period of time to be $1,275.00. Husband, in his brief, agrees with Wife's contention that the law holds that alimony ordered to be paid is due and collectable until the Petition to Modify is filed. *See Azbill v. Azbill*, 661 S.W.2d 682, 687 (Tenn. Ct. App. 1983). We reverse the trial court and order that the Husband pay the sum of $1,275.00 to the Wife as alimony arrearage. We do not find that the Court abused its discretion in setting the alimony *in futuro* at $250.00 per month, beginning January 22, 1997, and affirm the trial court.

The Final Decree of Divorce of December 1, 1993 ordered the Husband to continue payments on the policy of insurance on his life with the Wife as beneficiary and to transfer the policy to Wife's possession. The Court awarded to the Wife the marital residence subject to a $100,000.00 mortgage and, beginning January 1, 1994, the Wife was solely responsible for payment of the mortgage. The payment of the $100.00 monthly insurance premium was not designated as alimony, but was ordered as a part of the equitable distribution of the marital property and assets by the Court between the parties at the time of divorce.

Both parties testified at the hearing in the instant case that the $100,000.00 life insurance

policy was for the purpose of mortgage protection. The Husband testified that he already had $300,000.00 in life insurance and that he obtained the $100,000.00 life policy for mortgage insurance. The Wife agreed that the parties had discussed one of the uses of the policy would be to secure mortgage protection, but it actually was a life insurance policy purchased for the general benefit of the Wife. Wife demanded $3,500.00 in back payments from the Husband. The Wife further testified that the $100.00 premium monthly payment was automatically deducted from her banking account and that she had agreed with the Husband in January of 1994 that he would deposit his entire paycheck in her banking account and that she would make the payments of all obligations between the two parties and the balance would be split on a monthly basis between the two. She stated that after the house was sold, she continued to make the payments because it was in her best interest to do so and that she never demanded of the Husband to make the payments until she filed the Petition for Contempt. There is no showing in the record that the Husband ever refused to make the payments, but rather the Wife continued to maintain the status quo by continuing the automatic deduction from her bank account.

The Court decided the credibility issue in favor of the Husband and ruled that the $100,000.00 insurance policy was indeed for purposes of mortgage insurance, and when the Wife sold the house the obligation of the Husband to pay the premium terminated. The Court ruled that the Husband owed no money and that the Wife's Petition was denied as to that issue.

By this ruling, the trial court made a factual finding that the parties mutually agreed that the Wife would pay the insurance premiums. Unlike the requirements of T.C.A. § 36-5-101(a)(1) regarding the Court's authority to increase or decrease spousal support only upon a substantial and material change in the circumstances of the parties, such a showing is not required in this instance because the Order to pay the premium was not designated as alimony by the Court in the original Divorce Decree as was the payment of the credit card indebtedness. As the final arbiter of the facts, the Court in its discretion decided the issue.

These matters arose out of a divorce proceeding. Quoting from *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984):

> The Supreme Court of Tennessee, citing *Evans v. Evans*, 558 S.W.2d 851, 854 (Tenn. App. 1977), has ruled that in such cases, trial courts are vested with broad discretion in adjudicating the rights of the parties. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983). Decisions based

11

upon this discretion are entitled to great weight. *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. App. 1973).

In light of the Court's finding that the Wife voluntarily agreed with Husband to pay the insurance premiums in direct violation of the Divorce Decree of which she was fully aware; that the Wife paid the premiums every month from January, 1994 until the time of the hearing without ever demanding of the Husband to pay or reimburse her until she filed the Petition for Contempt; the absence of proof in the record that Husband ever refused to make the payments; all of which evidence fully supports the Court's finding of a consent agreement between the parties. We do not find abuse of discretion and, therefore, affirm the Court's denial of the Wife's claim of $3,500.00 as arrearage for life insurance premiums. Tenn. R. App. P. 13(d).

For the same reason, as previously noted, we affirm the trial court's action in terminating the Husband's obligation to pay the insurance premiums in the future.

We have carefully studied the two unpublished opinions cited by the Wife in support of her contentions regarding Issue I attacking the Court's discretion in reducing the permanent alimony award. We do not find either case to be persuasive authority. In *Binkley v. Binkley*, 13 TAM 42-15, 3 TFLL 1-7 (Tenn. Ct. App. 1998), the trial court stated that it was not really convinced that the alimony recipient (wife) was living with a third party and furthermore, that the wife's proof had rebutted the presumption that alimony was not needed. This Court, Middle Section, pointed out that the presumption does not rise until the evidence shows by a preponderance that wife was in fact living with a third person and the evidence failed to prove this. The lower court was affirmed because the evidence did not preponderate against the factual findings of the trial court. In *Duffin v. Duffin*, 18 TAM 51-10, 8 TFLL 3-19 (Tenn. Ct. App. 1993), this case likewise involved a Petition to Modify filed by husband pursuant to T.C.A. § 36-5-101(a)(3)(A) and (B). The trial court found for the husband and reduced the alimony payments. This Court, Western Section, disagreed with the lower court that the evidence supported the factual findings by a preponderance. To the contrary, this Court found from the record as a whole that the record did not contain evidence that wife and Grimes had "occupancy of a commonplace of abode" and reversed the trial court.

In the instant case, we agree with the trial court that the record contains overwhelming evidence that supports the Court's finding that (1) Norwood was living with the Wife and (2) he was contributing to Wife's support within the meaning of T.C.A. § 36-5-101(a)(3)(A) and (B).

Thereupon, the presumptive bubble burst and was replaced by the trial court's finding as an actual fact that based upon the proof in the record Norwood was contributing to the Wife's support. The Court's action was not "mere speculation" as contended by the Wife, but was based upon facts in the record. If the Wife was receiving financial help from another source and not Norwood, common sense dictates that she would have shown such in the proof in order to refute the existing proof in the record that clearly showed Norwood was living with her in her residence and was contributing to her support. This, she did not do. Thus, the record established a reasonable inference that Norwood was contributing to the support of the Wife as found by the Court. Although we review *de novo,* unless the evidence preponderates against the Court's findings of fact, we must affirm.

As stated in *Azbill*, 661 S.W.2d at 686, "the whole question involves the method of proof." The proof supported the Court's findings of fact by a preponderance and the trial court correctly followed the law, as previously noted, we affirm.

We now turn to the final issue of the Wife questioning whether the Court erred in failing to grant her post-judgment interest on the ordered monthly payments of $500.00 without interest until the amount of $10,006.85 is paid pursuant to the hold harmless clause of the original Divorce Decree which, as previously noted, had declared the hold harmless obligation of the Husband to be in the nature of alimony. As such, the trial court clearly possessed the authority under T.C.A. § 36-5-101(a)(1) and (2) to increase or decrease the payments. Wife does not complain of the trial court's variance in changing the payment of the award from lump sum to monthly installments, but rather contends that since the "Court granted Ms. Whiteside execution powers on the judgment in the event Mr. Whiteside failed to make the required payments it would be the height of injustice for Ms. Whiteside not to be awarded the post-judgment interest to which she is statutorily entitled."

The Wife cites the case of *Inman v. Inman*, 840 S.W.2d 927 (Tenn. 1992), in support of her claim: "The right to interest on a judgment is statutory, and the failure of any court to expressly provide such interest in its judgments does not abdicate the statute." *Inman*, 840 S.W.2d at 932.

Generally, we agree with the quote from *Inman*.

T.C.A. § 47-14-122 provides:

> **Interest on judgments -- Computation.** -- Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for new

13

trial.

T.C.A. § 47-14-121 provides:

> **Interest on judgments -- Rate.** -- Interest on judgments, including decrees, shall be computed at the effective rate of ten percent (10%) per annum, except as may be otherwise provided or permitted by statute; provided, that where a judgment is based on a note, contract, or other writing fixing a rate of interest within the limits provided in § 47-14-103 for that particular category of transaction, the judgment shall bear interest at the rate so fixed.

T.C.A. § 47-14-102(7) provides:

> "Interest" is compensation for the use or detention of, or forbearance to collect, money over a period of time, and does not include compensation for other purposes, including, but not limited to, time-price differentials, loan charges, brokerage commissions, or commitment fees. For example, when you borrow money, you pay the lender simple interest (which is like rent) for the use of the money. The amount of interest you pay depends on:
>
> > (A)   The principal, which is the amount you borrow;
> >
> > (B)   The rate, which is a percent based on a period of time, usually one (1) year; and
> >
> > (C)   The number of periods of time that you have the use of the money . . . .

With these statutes in mind, we examine the *Inman* facts which are that pending wife's appeal, the husband withheld a $100,000.00 cash award payment to the wife which had been awarded to her by a judgment of divorce. Subsequently, upon the appeal becoming final, the wife moved the trial court by motion for post-judgment interest from the date of the entry of the Divorce Decree until the $100,000.00 was paid. The husband contended that wife was not entitled to the post-judgment interest, assigning several reasons which are not pertinent here. The husband conceded that he had not paid the $100,000.00 cash award until the mandate from the Supreme Court on a previous appeal had been handed down. However, the payment by the husband did not include interest on the cash award from the date of the judgment. The *Inman* court cited the Code § 47-14-121 and stated: "Clearly, the plaintiff is entitled to interest at 10% on the $100,000 cash from the date of the decree until paid." *Inman v. Inman*, 840 S.W.2d 927, 931 (Tenn. Ct. App. 1992).

By contrast, the facts of the instant case are not in point with *Inman*. Here, the trial court awarded a judgment to the Wife in the amount of $10,006.85 and decreed that the debt would be paid by the Husband in installments of $500.00 and at no interest. In *Inman*, the wife received a cash

14

award payable immediately upon entry of the judgment while in the instant case the Wife received a monetary award but to be paid in installments. She is not entitled to the immediate use of the money as was the case in *Inman.*

We think the case of *Price v. Price*, 472 S.W.2d 732 (Tenn. 1971) is dispositive of this case. *See also West American Ins. Co. v. Montgomery*, 861 S.W.2d 230 (Tenn. 1993).

The facts of *Price* are that the appellant/wife was denied statutory post-judgment interest because the Divorce Decree awarded a money judgment as alimony *in solido* payable in future installments, and she was not entitled to the use of any of the money represented by the judgment until each installment was due. All installments were paid when due. The Supreme Court noted in *Price*, 472 S.W.2d at 734:

> In 33 A.L.R.2d 1455, under the heading "Right to Interest on Unpaid Alimony," the editorial staff gives a summary of the cases in the following language:
>
> In the greater number of cases dealing with the question, interest has been allowed on unpaid alimony. Thus, where the problem arose in respect of judgments for alimony in gross, interest has been allowed from the date payment was due unto the judgment until payment was made, and, <u>as to unpaid installments, interest has been allowed from the date the particular installment matured</u>. Likewise, interest has been allowed on unpaid installments of alimony against the estate of a deceased divorced spouse. The theory upon which interest is allowed in these cases is that a judgment awarding alimony is in the nature of a money judgment. The same result has been reached even where the judgment or installment became due and payable pending an appeal of the judgment awarding the alimony, on the theory that the party awarded alimony should not be deprived of it by the prosecution of an appeal. (emphasis ours).

Under *Price*, it is plain that the Wife in the instant case is entitled to be paid post-judgment interest by the Husband from the date each particular installment matures at the rate of ten percent (10%) per annum. The judgment of June 2, 1997 calls for the award of $10,006.85 to be paid in monthly installments of $500.00 until paid in full. The first installment matured immediately upon entry of the judgment on June 2, 1997. Each subsequent installment matured every thirty days thereafter consecutively until the gross amount is paid in full.

We hold that the Husband must pay post-judgment interest at ten percent (10%) per annum, said interest accruing *pro rata* beginning with the maturization of each installment and until the installment is paid. We reverse and modify the trial court's ruling denying post-judgment interest and remand the cause for the purpose of carrying out this Court's instruction.

The Appellee/Husband raises two issues:

I.   *The Court erred in not permanently terminating all permanent alimony.*

II.  *The Court erred in ordering Appellee to reimburse Appellant $10,006.85 in debts Appellant voluntarily paid.*

The trial court apparently was of the opinion that since the record showed the daughter was paying $250.00 of the original alimony of $1,000.00 and that Wife testified at the June, 1997 hearing that she had continued to receive $250.00 from the daughter that it was proper to leave the parties in status quo. T.C.A. § 36-5-101(a)(3) provides that the trial court "should suspend all or part of the alimony obligation of the former spouse." Under the state of facts shown in the record, we find no abuse of discretion by the trial court in its decision to suspend a part of the alimony obligation of the Husband. We affirm.

We hold that the court did not err in ordering the Husband to hold harmless the Wife in the amount of $10,006.85 for reasons we have previously stated in affirming the action of the trial court on this issue. The trial court held that the payment by the Wife of $10,006.85 for credit card debt owed by the Husband pursuant to the Divorce Decree was not a gift because she made the payment for her own specific purposes, not his, and that as such, the payment was not made voluntarily; it was done by the parties in direct contravention of the Court's Decree, and therefore lacked the legal authority to do so. There is no proof in the record by a preponderance that the Wife intended to divest her right, title, and interest in the $10,006.85, but to the contrary, she testified she felt compelled to do so in order to protect her employment as a vice president of a local bank. It was critical that she maintain a good credit rating. We agree with the trial court's findings that this was not a gift and that the Wife was entitled to reimbursement.

This cause is remanded to the trial court for enforcement of its Divorce Decree as modified by this Court.

The costs of the appeal are taxed one-half against the Appellant/Wife and one-half against the Appellee/Husband. Each party shall pay their attorney's fees.

_____
WILLIAM H. WILLIAMS, SENIOR JUDGE

CONCUR:

16

_____

W. FRANK CRAWFORD, P.J., W.S.


_____

DAVID R. FARMER, J.

# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT KNOXVILLE

JACQUELINE S. WHITESIDE,  )

               )      Hamilton Circuit No. 93-DR-2557

     Petitioner/Appellant,    )

               )      Appeal No. 03A01-9707-CV-00272

v.                 )

               )

JERRY WHITESIDE,       )

               )

     Respondent/Appellee.  )

---

## JUDGMENT

---

This cause came on to be regularly considered by the Court on the record and for the reasons stated in the Court's opinion of even date, it is ordered that:

1. The Appellee, Jerry Whiteside, shall pay to the Appellant, Jacqueline S. Whiteside, the sum of $1,275.00 as alimony arrearage, together with post-judgment interest at the rate of 10% per annum from the date of entry of the trial court's order in this cause, to wit, June 2, 1997, until paid in full.

2. The Appellee, Jerry Whiteside, shall pay post-judgment interest at the rate of 10% per annum to the Appellant, Jacqueline S. Whiteside, for the reimbursement of the principal sum of $10,006.85 payable in consecutive monthly installments of $500.00, the first payment to begin on the date of entry of the order of the trial court in this cause, to wit, June 2, 1997, until paid, and thereafter on the date of maturity of each installment until paid in full.

3. The costs of this cause are taxed one-half to the Appellant and one-half to the Appellee, for which let execution issue, if necessary. Each party shall pay their respective attorney's fees.

4. The cause is reversed in part, affirmed in part, and remanded to the trial court

for enforcement of the judgment as modified by this Court.


_____
WILLIAM H. WILLIAMS, SENIOR JUDGE


_____
W. FRANK CRAWFORD, P.J., W.S.


_____
DAVID R. FARMER, J.